Samuel F. Nurdlinger (Professionally Known as Samuel F. Nixon) et al., Trading as Zimmerman & Nixon, Plffs. in Err., v. William B. Irvine, Treasurer of the City of Philadelphia, to the Use of the Commonwealth.

---

Thomas F. Kelly v. Same.

---

Louisa Drew v. Same.

The proprietors of theatrical exhibitions in Philadelphia must obtain a license from the state, under the act of May 15, 1850, § 5, and the act of April 16, 1845, § 2. The 2d section of the act of 1845 is not repealed by implication by the act of 1850.

The license required by these acts must be renewed annually.

It is a personal license, and not confined to the building described in it.

The payment of a fine, upon conviction of the violation of a law requiring a license, does not operate as a bar to the collection of the license.

(Decided April 12, 1886.)

Error to the Common Pleas, No. 3, of Philadelphia County to review a judgment for the Commonwealth, plaintiff, upon a case stated in the nature of a special verdict, for the opinion of the court. Affirmed.

The following facts appeared by the case stated.

First. The above defendants (plaintiffs in error first case) are now and have been since January 1, 1884, the lessees and managers of the Chestnut street theater and the Chestnut street

opera house, both located in the city and county of Philadelphia; and as such lessees and managers the said defendants have carried on both of said theaters, and have given theatrical exhibitions therein since January 1, 1884.

Second. The defendants have not given theatrical exhibitions, nor have they or either of them held or managed a theater, at any other place or places.

Third. The defendant, Samuel F. Nixon, was indicted, tried, and convicted, in the court of quarter sessions for the county of Philadelphia, for holding and exhibiting a theatrical exhibition on the 12th day of November, 1883, in the Chestnut street theater aforesaid, without having obtained a license from the state, and that he was sentenced to pay and did pay thereunder a fine of $500. That the defendant, Samuel F. Nixon, exhibited said theatrical exhibition as a partner of J. Frederick Zimmerman, and that the said defendants were managing said theater at that time as a partnership.

Fourth. Before the defendants became the lessees and managers of the Chestnut street opera house, the said building was owned by Robert Fox, who, as such owner, gave and exhibited theatrical exhibitions in said building.

Said Robert Fox, while thus engaged in giving theatrical exhibitions in said theater building, in the year 1874, paid to the state of Pennsylvania the sum of $500 as and for a license to the state for exhibiting a theatrical exhibition in said building in the city and county of Philadelphia.

Fifth. The defendants have not paid for nor obtained any other license from the state of Pennsylvania allowing them to show, hold, or exhibit said theater and theatrical exhibitions in said theater buildings.

The material parts of the acts of assembly relating to the subject were as follows: The act of April 16, 1845 (P. L. 532):

Sec. 2. That no theatrical exhibition, or exhibitions of circus performances, or menageries shall hereafter be allowed in this commonwealth, without a license from the state; and the treasurer of any county shall have authority to grant licenses, under his hand and the seal of the proper county, for such exhibition on the payment of the following sums, to wit:

For every theater or circus in the city or county of Philadelphia, the sum of $200; and for every theater or circus in the county of Allegheny, the sum of $100; and for every theater or

circus in any other county in this commonwealth, the sum of $50; for every menagerie the sum of $40: *Provided,* That the provisions of this act shall not exempt any circus, theater, or menagerie from payment of such taxes as may be imposed upon them by any city or borough in this commonwealth: *Provided,* That a license granted by the treasurer of any county shall entitle the party receiving the same to make such exhibitions in any part of the state for the period of one year: *and Provided further,* That no circus or theater which shall obtain a license out of the county of Philadelphia or the county of Allegheny shall be permitted to make such exhibitions within the said counties, without paying into the treasury of the said counties, for the use of the state, such additional sum as will make the whole amount paid equal to the sum hereinbefore required for such license in said counties respectively; and if any person or persons shall attempt to exhibit or perform as aforesaid, in any of the counties of this commonwealth, without having first obtained a license according to the provisions of this section, he or they so offending shall be liable to indictment, and, on conviction thereof, shall forfeit and pay for every such offense a sum not less than $100, nor greater than $1,000, in the discretion of the court, to be paid into the treasury of the county wherein such conviction shall take place.

The act of April 10, 1849, § 24 (P. L. 576):

Sec. 24. That hereafter the price of a theater or circus license in the city or county of Philadelphia shall be $500; and in the county of Allegheny, $200; and for every theater or circus in any other county in this commonwealth, $80.

The act of May 15, 1850, § 5 (P. L. 773), supplementary to the act of 1849:

Sec. 5. That hereafter the price of a theater or circus license or museum, or any other place for theatrical representations, shall be in the city and county of Philadelphia, $500; and in the county of Allegheny, $200; and for each and every other county of this commonwealth, within the bounds of which such theater or circus may be shown, held, or exhibited, the sum of $50; and the price of a menagerie license shall be in the city and county of Philadelphia, $200; in the county of Allegheny, $100; and for each and every other county of this commonwealth, within the bounds of which such menagerie may be exhibited or shown, the sum of $30; such licenses shall be granted

according to the provisions of the 2d section of the act of the 16th day of April, 1845, by the treasurer of the proper county, upon receiving the price of the same; but no such license shall entitle the party who shall receive it to make any such exhibition except within the county for which the same shall be granted; and if any person or persons shall attempt to show, hold, or exhibit any such theater, circus, or menagerie, within any city or county of this commonwealth, without such license as aforesaid, he or they so offending shall be liable to indictment, and on conviction thereof shall pay for every such offense a fine not less than $200, nor greater than $1,000, at the discretion of the court trying the said offense.

The opinion of the court below was as follows:

And now, to wit: September 28, 1885, the above case having been called for argument, the court declined to hear any argument in the case, for the reason that the same question was decided in favor of the commonwealth in the case of Irvine v. Fleishman, C. P. No. 1, March term, ·1885, No. 528, wherein Judge BIDDLE filed the following opinion:

"We think that the phraseology 'for the period of one year,' in the act of April, 1845 (P. L. p. 532), is applicable, not alone to the state license, but to the county license as well. It means to authorize for a certain sum a theatrical license for a period of one year, provided that it shall also entitle exhibitions to be made under it in any part of the state. We think it should read 'for every theater or circus in the city or county of Philadelphia, the sum of $200 for the period of one year, provided that a license granted by the treasurer of any county shall entitle the party to make such exhibition in any part of the state.'

"This act is the foundation of the system, the supplements to it simply changing the amounts to be paid.

"This court adopts the opinion filed in that case, and for the reasons therein stated judgment is entered against the defendants in favor of the commonwealth, upon the case stated, for $2,000."

*J. H. Shakespeare, J. H. Heverin,* and *T. J. Diehl,* for plaintiffs in error.—The 2d section of the act of 1845 is repealed by the act of 1850, because:

a. Its matter necessarily implies a negative; and its provisions are clearly and indisputably contradictory and contrary to that section of the act of 1845.

b. It introduces a new rule, and is evidently intended as a substitute for said section of the act of 1845.

c. It covers the whole subject of that section of the act of 1845, and embraces new and different provisions, and imposes different and additional penalties.

A revising or amendatory statute covering the whole subject-matter of several laws repeals them all. Norris v. Crocker, 13 How. 429, 14 L. ed. 210; United States v. Cheeseman, 3 Sawy. 424, Fed. Cas. No. 14,790; Murdock v. Memphis, 20 Wall. 617, 22 L. ed. 437.

A statute is repealed by the enactment of a later one repugnant to, or covering, the whole subject of the former. United States v. Barr, 4 Sawy. 254, Fed. Cas. No. 14,527; Dowdell v. State, 58 Ind. 333; United States v. Claflin, 97 U. S. 546, 24 L. ed. 1082.

All the provisions need not be repugnant to work an entire repeal, where it is evident the later statute was intended to supersede the earlier one. Daviess v. Fairbairn, 3 How. 636, 11 L. ed. 760; King v. Cornell, 106 U. S. 395, 27 L. ed. 60, 1 Sup. Ct. Rep. 312; and Red Rock v. Henry, 106 U. S. 596, 27 L. ed. 251, 1 Sup Ct. Rep. 434.

A subsequent act making a different provision on the same subject is not to be construed as an explanatory act, but an implied repeal of the former, if the latter act be incompatible with the former. Dash v. Van Kleeck, 7 Johns. 497, 5 Am. Dec. 291; Columbian Mfg. Co. v. Vanderpoel, 4 Cow. 556.

Where there are two acts upon the same subject, and the one last in date embraces all the provisions of the one prior in date, and also new provisions, and imposes different or additional penalties, the latter act operates, without any repealing clause, as a repeal of the one prior in date. United States v. Claflin, 97 U. S. 546, 24 L. ed. 1082; Butler v. Russel, 3 Cliff. 251, Fed. Cas. No. 2,243; Norris v. Crocker, 13 How. 429, 14 L. ed. 210; Patterson v. Tatum, 3 Sawy. 165, Fed. Cas. No. 10,830; Henderson's Tobacco, 11 Wall. 652, 20 L. ed. 235.

Where two acts are not in express terms repugnant, yet, if the later act covers the whole subject of the first, and embraces new provisions plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act. United States v. Tynen, 11 Wall. 92, 20 L. ed. 154.

Lord KENYON said, in Williams v. Pritchard, 4 T. R. 2: "It

cannot be contended that a subsequent act of Parliament will not control the provisions of a former one, if it were intended to have that operation."

A subsequent affirmative statute is a repeal, by implication, of a former one made concerning the same matter, if it introduces a new rule upon the subject, and is evidently intended as a substitute for the former law. *Re* Somerset Road, 74 Pa. 61.

Every affirmative statute is a repeal of a precedent affirmative statute, where its matter necessarily implies a negative; but only so far as it is clearly and indisputably contradictory and contrary to the former act in the very matter, and the repugnancy such that the two cannot be reconciled. *Re* Barber, 86 Pa. 392–400. See also Norris v. Crocker, 13 How. 429, 14 L. ed. 210; Nichols v. Squire, 5 Pick. 168; Bartlet v. King, 12 Mass. 537, 7 Am. Dec. 99; Rex v. Cator, 4 Burr. 2026; King v. Davis, 1 Leach C. 271; United States v. Tynen, 11 Wall. 92, 20 L. ed. 154; Michell v. Brown, 1 El. & El. 267; Parry v. Croydon Gas & Coke Co. 15 C. B. N. S. 568.

The license imposed is not an annual charge; one payment was sufficient. The proviso authorizing the making of any "such exhibition in any part of the state for the period of one year" was merely for the purpose of restricting to one year the privilege of the license to give exhibitions in any part of the state.

In every revenue statute in force in the commonwealth, where the purpose is to collect a yearly tax, the words "year," "yearly," or "per annum" are used in connection with the term license; and in all those statutes the intention to tax each year is expressed in clear and unambiguous language.

A revenue law is to be construed in the same manner as a penal statute.

Acts imposing a tax are to be strictly construed, and are not to be extended without the clearest evidence of intention.

In cases of doubt the construction is to be for the relief of the citizen, and not in favor of the tax.

Common-law rights cannot be defeated by implication from the terms of a statute.

In revenue statutes an equitable construction is never allowed.

Every charge upon the citizen must be imposed by clear and unambiguous language. Hubbard v. Johnstone, 3 Taunt. 177; Philadelphia v. Davis, 6 Watts & S. 276; Gosling v. Veley, 12

Q. B. 407; Dickson v. Pape, 7 Ir. L. Rep. 147; Queen v. Guardians of Poor, 12 Ir. C. L. Rep. 35; Shaw v. Ruddin, 9 Ir. C. L. Rep. 214–221; Hibernian Mine Co. v. Tuke, 8 Ir. C. L. Rep. 321; Stockton & D. R. Co. v. Barrett, 11 Clark & F. 590; Partington v. Atty. Gen. L. R. 4 H. L. 122; Chase v. New York C. R. Co. 26 N. Y. 523; Dwarr. Stat. 255.

Is the tax a personal one, or is the license granted confined to a particular building described in it?

If it is a personal license, as is claimed by the counsel for the commonwealth, then the defendants being partners, and as such having managed and carried on both the Chestnut street opera house and Chestnut street theatre as one business, are only required to take out one license for their said business, which will entitle them to give theatrical representations at any place or places within the county of Philadelphia.

If, upon the other hand, it is held that it is not personal license, but attaches to the theater building, then the payment by Mr. Fox of $500 to the state, as and for a license for the Chestnut street opera house, inures to the benefit of the defendants.

The commonwealth, having proceeded against Nixon, one of the defendants, by indictment, the mode pointed out by the act, can proceed in no other form; and therefore his payment of the fine of $500 in that proceeding bars any further proceeding against him or his copartner under the act. Re International Patent Pulp & P. Co. 37 L. T. N. S. 351; McKinney v. Monongahela Nav. Co. 14 Pa. 66, 53 Am. Dec. 517; Rex v. Robinson, 2 Burr. 803.

*J. B. Anderson* and *Joseph L. Caven,* for defendant in error. —There is nothing in any of the subsequent acts which repeals or supersedes the provisions of the act of 1845 imposing this license. In fact, they provide that the licenses therein provided for shall be granted according to the provisions of the act of 1845.

The defendants, in order to maintain their proposition that the license, if at all, is not an annual one, but merely one payment for an indefinite period, assert that the following proviso in the act of 1845: "Provided that a license granted by the treasurer of any county shall entitle the party receiving the same to make such exhibition in any part of the state for the period of one year,"—is repealed by the following, in the act

of 1850: "But no such license shall entitle the party who shall receive it to make any such exhibition except within the county for which the same shall be granted."

But it is manifest that the only effect of this clause of the act of 1850 is to limit the exhibition to the county, instead of any part of the state, as provided for in the act of 1845; it does not repeal the limit of time, to wit, one year; and the effect of the above clause in the act of 1850 is as if the act of 1845 itself provided as follows: "That a license granted by the treasurer of any county shall entitle the party receiving the same to make such exhibitions for the period of one year."

The license is required annually.

If a doubt existed, which does not in this case, the title of an act will furnish aid in showing what was in the mind of the legislature. United States v. Fisher, 2 Cranch, 399, 2 L. ed. 317; United States v. Palmer, 3 Wheat. 610, 4 L. ed. 471; Bartlett v. Morris, 9 Port. (Ala.) 268.

It will, therefore, be observed that the act imposing this license is a revenue act. The title of the act of 1845 is: "To Increase the Revenue and Diminish the Legislative Expenses."

Webster gives the meaning of the word "revenue:" "The annual produce of taxes, excise, customs, duties, rents, etc., which a nation or state collects and receives into the treasury for public use."

Bouvier: "The income of the government, arising from taxation, duties, and the like."

There is, however, no doubt or ambiguity in the several acts of assembly on this subject, and all rules of construction are against the interpretation of the defendant.

Where a law is plain and unambiguous, whether expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. United States v. Fisher, 2 Cranch, 399, 2 L. ed. 317; and Bartlett v. Morris, 9 Port. (Ala.) 268; Com. v. Randall, 2 W. N. C. 210.

Revenue and duty acts are to be construed according to the import and meaning of their terms; and when the legislative intention is ascertained, that and that only is to be our guide in interpreting them. United States v. Breed, 1 Sumn. 159, 160, Fed. Cas. No. 14,638.

In the case of Irvine v. Fleishman, C. P. No. 1 of this county,

held, that the license was an annual one and judgment entered accordingly for the commonwealth. The defendant, Fleishman, paid the annual license, as have a number of other theater managers in this county and throughout the state, both at this time and heretofore since passage of the several acts on the subject.

PER CURIAM:

These three cases were argued together. The main question therein is common to all of them.

We concur in the construction put upon the statute relating to the time for which the licenses were authorized to be granted. It would be a forced interpretation to hold that they were to be effective for more than one year, or at more than one place in the county.

The payment of a fine for a violation of the law is no legal bar to the right of the treasurer to collect the license fees.

Judgment affirmed in each case.