# HITCHCOCK *v.* HITCHCOCK.

### HUSBAND AND WIFE; DIVORCE; DESERTION.

1. To ascertain whether a wife was justified in leaving her husband, where it appears that on a prior occasion she had left him because of charges of infidelity he had made against her, but had returned, all inquiry for acts of justification must be limited to the period between her return and her second desertion, as by her return to him all the past was condoned.

2. Neither parsimony, nor indifference, nor dissatisfaction with existing conditions will justify desertion and abandonment of the matrimonial relation; and it is a general rule, to which there may be exceptions, that the misconduct which justifies separation must be such as would justify divorce,—at least, divorce from bed and board.

3. Where a wife wilfully deserts her husband and thereafter brings suit for separate maintenance, and he has in no way procured, consented to or connived at the separation, he is under no legal obligation to solicit her return, and her persistence in such desertion continuously for two years gives the husband a right to divorce under the statute in force in this District.

4. And, under such circumstances, the institution of a suit by the husband, after the wife's desertion, to have their marriage declared null and void, is not sufficient to convert the desertion into justifiable separation from the time of the pendency of the suit, and that time will not be deducted from the period of separation so as to reduce the period of desertion within or below the statutory period of two years.

No. 878. Submitted May 3, 1899. Decided June 6, 1899.

HEARING on an appeal by the defendant from a decree
15 Ct. App.—7

of the Supreme Court of the District of Columbia granting an absolute divorce on the ground of desertion. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is an appeal from a decree of the Supreme Court of the District of Columbia granting a divorce on the ground of desertion.

The parties, of whom the appellee, Carlos A. Hitchcock, was then 70 years of age and the appellant, Emeline G. Hitchcock, 39 years, were married at Saratoga Springs, in the State of New York, as the result of an introduction to each other through a matrimonial brokerage agency. Both had been married before. The appellee was a widower, without children; but a daughter of his first wife, by a previous marriage, continued to live with him, with her husband and two children; and they all constituted one family, even after his marriage with the appellant. The appellant had also been previously married, at least twice—for there was question whether there had not been a third marriage on her part before her marriage to the appellee; but she was childless at the time of this last matrimonial venture, nor have there been any children by this marriage.

The parties lived together in Vermont, which was the appellee's original home, and in the city of Washington, where he had also a residence; and they continued to live together until about March 30, 1894, when, in consequence of an altercation between them, and, as the appellant claims, in consequence of an intimation by the appellee that she had been guilty of adultery, the appellant left the house in Washington, where they were then residing. She returned, however, in the following December, and continued to live with her husband until August 10, 1895, when they again separated. They were then living at Pittsford, in the State of Vermont. The separation proved to be final; and there was no further reunion or reconciliation. A series of litigations ensued.

The appellant filed a bill in the county court of Rutland County, in the State of Vermont, in which she charged the appellee with acts of personal violence towards her, and with having made false accusations against her of illicit and adulterous intercourse with other men; and she prayed for support and maintenance.    What proceedings were had in this suit does not appear; but it is stated that it never came to a hearing.    This bill seems to have been filed on August 15, 1895.

On July 6, 1896, the appellee filed in the Supreme Court of the District of Columbia a bill for divorce from the appellant, in which he recited the dispute that had occurred between them in March, 1894, in consequence of his suspicion of criminal intercourse on her part with another person; that since that time they had not cohabited with each other, although he had contributed from time to time money for her support; that she had instituted the suit in Vermont which has been mentioned, and which he states to be yet pending; and that since their separation he had been credibly informed and thereupon charged the fact to be, that, at the time of her marriage to him, the appellant was the wife of one White, with whom she had lived as such wife, but whom she had abandoned without procuring then or at any subsequent time any dissolution of the marriage tie between them.    And he thereupon prayed for a dissolution of the bond of matrimony between the appellant and himself.

Subsequently the appellee filed an amended or supplemental bill, in which he charged the appellant with the commission of acts of adultery on three several occasions, in the month of August, September and October of 1893, at Pittsford, in Vermont, which he stated he did not discover until about September 20, 1896.

The appellant thereupon dismissed her bill in Vermont, and filed an answer and a cross-bill to the suit of the appellee in this District; but she subsequently dismissed the

cross-bill of her own accord, after answer to it by the appellee.

Testimony was taken and the suit came on for a hearing. At the hearing on October 26, 1897, the bill was dismissed on its merits.

A few days thereafter, on November 5, 1897, the appellant filed another bill for maintenance and support. To this the appellee filed an answer, reiterating his charges of infidelity and alleging her desertion of him on August 10, 1895.

On January 24, 1898, the appellee filed a second suit for divorce on the ground of wilful desertion and abandonment of him by the appellant continued for upwards of two years from August 12, 1895, but referring also to the alleged misconduct and infidelity of the appellant. To this the appellant filed an answer, the substance of which was that she had been compelled to leave the appellee's home by his continued abuse and ill-treatment; and she averred her willingness then and at all previous times to return to him upon some assurance that there would be a cessation of his alleged ill-treatment of her.

There were two suits then pending, the one by the appellant for maintenance and support, the other by the appellee for divorce. It was agreed that they should go on together, and that the testimony taken in the one might be used in the other. They came on for hearing together; and on January 6, 1899, the court rendered a decree in the combined causes divorcing the appellee from the bond of marriage between him and the appellant on account of wilful desertion and abandonment by her, but directing the payment by the appellee to the appellant of the sum of forty dollars a month as alimony for such time as she should remain unmarried during their joint lives or until the further order of the court in the premises, such alimony to be in satisfaction of any and all claims which the appellant might have against the appellee or his estate.

The wife, Emeline G. Hitchcock, thereupon appealed from so much of the decree as divorced her husband from the bond of matrimony with her; and this appeal it is which is now before us. Neither party appears on the record to have taken any exception to the allowance of alimony or to the amount of such allowance, and that question therefore does not enter into the appeal. Both parties may be regarded as having been successful in their respective suits.

*Mr. A. A. Birney* and *Mr. Henry F. Woodard* for the appellant:

1. It is not desertion if the wife leave her husband because of false charges of infidelity. *Kinsey* v. *Kinsey*, 37 Ala. 393; *Neff* v. *Neff*, 20 Mo. App. 182. Misconduct of the husband of such degree as not to amount to cruelty for which the wife might sue for divorce may yet justify her in leaving his house and prevent his obtaining a divorce. *Lyster* v. *Lyster*, 111 Mass. 327, and cases cited; *Levering* v. *Levering*, 16 Md. 213. The charges of adultery made by the husband without any proof, and his reiterations thereof to all who would listen to him for more than a year, amply justified the wife in withdrawing from his house. In this connection it is noticeable that the husband, in the first suit for divorce, did not offer a syllable of proof in support of his charge of adultery.

2. The essence of the wrong of desertion by a wife consists in her refusing to live with her husband *when he desires her to live with him.* *Newing* v. *Newing*, N. J. Eq. 498. When a husband not entirely blameless for the act, makes no effort to prevent his desertion by his wife, and acquiesces in, and appears satisfied with its continuance, he is not entitled to a divorce on the ground of desertion. *Harold* v. *Harold*, 9 L. R. A. 696. In appellee's bill for divorce, he abstains from averring that he is, or was at any time, willing to receive her.

3. If the offense of desertion is the continued wrongful

absence for more than two years against the will of complainant, as the authorities declare, it would seem incredible that in this case the husband can be entitled to count as part of the statutory period the time between July 6, 1896, and November 5, 1897, during all of which he strenuously denied that she was his wife. Without counting this time the statutory period of two years had not passed and the court .was without power to decree divorce.

*Mr. James S. Edwards* and *Mr. Job Barnard* for the appellee:

1. The propositions presented by counsel for appellant are, that the wife was justified in leaving her husband; that the husband was not willing to receive her again; and that, pending the first suit for divorce, the desertion, if established at all, should not be counted to make up the two years. In answer to these points, we contend that there is absolutely no evidence to show any justifiable ground for the wife leaving her husband as she did, and that there is no evidence to show any willingness on her part to return during the first two years after desertion, or at any other time since; and that if there is any proof at all of his unwillingness to receive her back, it is only after the two years were completed, at which time he was not obliged to receive her, or to allow her to return. 1 Bishop on Mar. and Div., Sec. 810, and the cases there cited.

2. As to the desertion itself, which consists, first, of a cessation of the cohabitation, and, second, an intent in the mind of the accused party to desert the other, the evidence shows clearly that the court below reached a correct conclusion. The third element in a *prima facie* case of desertion, which is sometimes claimed as law, and which counsel for appellant seek to introduce by their argument in this case, namely, that the separation must be "against the will" of the party deserted, is an element not admitted by the best authorities to be good law. 1 Bishop, Secs. 777 and 783;

2 Bishop, Sec. 681; *Bailey* v. *Bailey,* 21 Gratt. 43; *Latham* v. *Latham,* 30 Gratt. 307; *Bennett* v. *Bennett,* 43 Conn. 313; *Morrison* v. *Morrison,* 20 Cal. 431.   When once a separation and intent to desert are shown, the same intent will be presumed to continue until the contrary appears.   And no temporary excuse for remaining absent from the party deserted, will be considered as discontinuing the desertion. A suit for divorce brought by the deserted party against the other, after the desertion has commenced, will not of itself stop the running of the time of desertion.   1 Bishop, Secs. 802, 803.

Mr. Justice Morris delivered the opinion of the Court:

The assignments of error are two : (1) That the testimony failed to prove wilful desertion and abandonment of the appellee by the appellant within the meaning of the statute, as was held by the court below ; and (2) That it was error to hold that the time from July 6, 1896, to October 26, 1897, during which the appellee was claiming that the appellant was not his wife, should not be excluded from the computation in estimating the period of desertion.

And upon these assignments of error three propositions have been advanced on behalf of the appellant, which are : (1) That the appellant was fully justified in leaving her husband; (2) That, whether she was justified or not in so doing, he has not been willing to receive her again, but has taken steps to prevent her return ; and (3) That he may not include within the statutory period of two years the period during which he denied her as his wife, and sought to have a decree to that effect.

1. With reference to the first proposition it may be said that it raises a question of fact rather than one of law.   It is very clear to us that, if the charges of infidelity that were made by the appellee against the appellant in March of 1894, were sufficient justification for her to leave him at that time, as she did, and to remain away from him for

several months, with regard to which it is unnecessary for us to express any opinion, or if such charges were repeated at any time during the period intervening between March and December of 1894, during which the parties remained separate, yet nothing that then occurred can be taken as affecting the subsequent separation which took place on August 10, 1895, except in as far as it may tend to throw light, if any it does, upon the conditions existing at the time of this latter separation.   The appellant, it is conceded, returned to the home of the appellee in December of 1894; and by the reconciliation or apparent reconciliation then effected all the past on both sides was condoned.   Plainly, therefore, all inquiry for acts of justification for the subsequent separation which occurred on August 10, 1895, in Vermont, must be limited to the period which intervened between that date and the time of the return of the appellant to the appellee in December, 1894.

Now, in a patient and careful search through the record, we have failed to find any evidence whatever of any acts of justification that are referable to this period.   There is evidence of parsimony, perhaps even of penuriousness, on the part of the appellee; and there is ample evidence of increasing indifference on his part, and ample evidence of dissatisfaction on the part of the appellant with her position in the household, both of which were natural results of the union entered into by the parties under their special circumstances. But neither parsimony, nor indifference, nor dissatisfaction with existing conditions will justify desertion and abandonment of the matrimonial relation.   It has been generally held, although possibly there may be exceptions to the rule, that the misconduct which justifies separation must be such as would justify a divorce, at least a divorce from bed and board.   *Van Dyke* v. *Van Dyke*, 135 Pa. St. 459; *Lynch* v. *Lynch*, 33 Md. 328; *Harding* v. *Harding,* 22 Md. 337; *Levering* v. *Levering*, 16 Md. 213; *Laing* v. *Laing*, 21 N. J. Eq. 248; *James* v. *James*, 58 N. H. 266; *Packard* v. *Packard*, 90

Iowa, 765; *Dwyer* v. *Dwyer*, 16 Mo. App. 422; *Camp* v. *Camp*, 18 Tex. 528; *Pierce* v. *Pierce*, 33 Iowa, 238; *Alkire* v. *Alkire*, 33 W. Va. 517; *Martin* v. *Martin*, 33 W. Va. 695.

Whatever inducements, therefore, the appellant may have had to leave the home of the appellee on August 10, 1895, we do not think that there is any evidence to be found in the record of any action or course of conduct on the part of the appellee which in law could be regarded as a justification of her abandonment. Consequently, we are compelled to consider her departure from the home at that time as an act of wilful desertion. That she departed without any intention to return and with the premeditated purpose to terminate the matrimonial relation, although not to sever the bond of matrimony, is sufficiently shown by the fact, that immediately upon her withdrawal, and within five days thereafter, she caused a suit to be instituted. for a separate maintenance and support, which suit was kept pending by her until after the institution of the appellee's first suit in this District on July 6, 1896.

2. The second proposition advanced on behalf of the appellant is, that, whether she was justified or not justified in leaving her husband, he has not been willing to receive her again, but has taken steps to prevent. her return; and that therefore her separation from him for two years and upwards can not be regarded as having been against his will and as constituting wilful desertion and abandonment, in contemplation of law. But to the correctness of this proposition, as applicable to the circumstances and condition of these parties, we can not accede.

As we have said, so far as the record discloses, the appellant had wilfully and without just legal cause deserted and abandoned the appellee; and it is not shown that he had in any way procured, consented to, or connived at the separation. The appellant had emphasized her action by the institution of a suit for separate maintenance; and it is not apparent that, while the suit was pending, the appellee was under any

legal obligation to solicit her return, nor was he under obligation to manifest in any way an active desire for her return.

But it is argued that he went beyond this position of indifference and inaction, and took steps to prevent her return. Two circumstances are cited in proof of this, one the alleged locking of the doors of the house in Washington on one occasion when her possible return was apprehended, the other the institution of the suits by the appellee which have been mentioned. But the testimony in regard to the locking of the doors is rather indefinite and unreliable; and if such locking occurred, it is not shown to have been done at the instance of the appellee. Moreover, it was not done until about October of 1897, when the litigation between the parties was pending, and more than two years had elapsed from the date of desertion, when, if at all, the appellee had the right to exclude the appellant from his house.

But the main fact relied upon as an active step taken by the appellee to prevent the return of the appellant to him, was the institution of suit by him on July 6, 1896, to have the marriage declared null and void, which suit, by the supplemental bill filed in it, was combined with a suit for divorce on the ground of adultery. It is argued—and there is very good authority for the position—that a separation is justifiable where it is caused by the pendency of a suit to annul the marriage (*Sullivan* v. *Sullivan,* 2 Addams' Ecclesiastical Rep. 299; *Clowes* v. *Clowes,* 9 Jurist, 356), or by criminal proceedings instigated by the plaintiff (*Porritt* v. *Porritt,* 18 Mich. 420), or even by the pendency of a suit for divorce (*Doyle* v. *Doyle,* 26 Mo. App. 545; *Marsh* v. *Marsh,* 14 N. J. Eq. 315). As was said in several of these cases, it is neither right nor proper that parties should be living together and cohabiting, while any such proceedings are pending between them. But no such rule can apply in the present case.

In the present case, as we have stated, so far as the record

discloses, the appellant's departure from the house of the appellee was her own-deliberate and wilful act, not superinduced in any way by the appellee; and it was to all intents and purposes, under the law, an act of wilful desertion and abandonment. It was not caused by the appellee's suit; for it antedated such suit; and it was in no manner affected by the institution of that suit. The purpose of the appellant to persist in her abandonment was sufficiently evidenced by her persistence in a suit for separate maintenance; and that persistence may be said to have been practically continuous. For, no sooner had she dismissed her suit in Vermont than she renewed the same contest by her cross-bill filed in the appellee's suit for nullity and divorce; and almost immediately upon the determination of this contest, by her filing a new suit precisely on the same lines. She can not complain if this persistent litigation, which it was her right to institute, is taken, as it was undoubtedly intended to be taken, as evidence of her purpose not to return again to the appellee or to cohabit with him. And such being evidently her purpose, it is not apparent that the purpose was affected in any manner by the counter-suits instituted by the appellee.

The cases, to which reference has been made as justifying temporary separation, are all cases in which the rules of propriety demanded that the parties should not cohabit during the pendency of legal proceedings between them. But the separation justified in those cases is very different from wilful desertion and abandonment without adequate legal cause; and in most, if not all of the cases, the justification is simply to the extent that such separation is not misconduct such as to excuse the commission of adultery by the other party.

The statute in force in this District provides that a divorce may be granted " for wilful desertion and abandonment by the party complained of against the party complaining for the full uninterrupted space of two years." It is wilful desertion and abandonment, and not a

justifiable separation, when one withdraws absolutely from the marital relation, without the intention to return; and against the will and without the consent or connivance of the other party, and without sufficient legal cause. Persistence for two years continuously in such desertion and abandonment makes the cause of divorce complete. Now, it is not apparent to us how an appeal by the injured party to the courts in good faith to give him or her relief against other supposed misconduct of the deserting party can have the legal effect of condoning the wilful desertion and abandonment. This, it seems to us, would be to place a premium on wrongdoing, instead of holding it to its legitimate legal consequences. Litigation, instituted in bad faith, without probable cause, and for the purpose of confirming the separation, can not be allowed to inure to the benefit of the person who has recourse to such perversion of legal methods. But litigation instituted within the limits of reason and good faith, apparently on probable cause, such as there certainly was in the suit instituted by the appellee to procure a decree declaring the nullity of his marriage with the appellant, should not have the legal effect of destroying or barring the just right to which a person is otherwise entitled. The appellee's litigation did not cause the appellant's desertion and abandonment of him, had no effect upon it in any way, and was not a cause of its continuance.

This conclusion, which seems to be the deduction of reason, is confirmed by very respectable authority. In the case of *Wagner* v. *Wagner*, 39 Minn. 394, it was held that, if a wife were guilty of desertion for unjustifiable reasons, and such desertion continued for the same reasons and not on account of the husband's suit for adultery commenced before the period of desertion was complete, the pendency of the suit would not interrupt the period of desertion. And to the same effect is the case of *Neddo* v. *Neddo*, 56 Kansas, 507. There are authorities apparently to the contrary (see *Chipchase* v. *Chipchase*, 48 N. J. Eq. 549 ; *Palmer* v. *Palmer*, 36 Florida, 385); but they would seem to depend upon

provisions of statutes differing considerably from that in force with us. There are also cases which hold that the deserted party is not entitled to a divorce, on the ground of desertion and abandonment, unless he or she was at all times willing, during the separation, to receive back the deserter if request to that effect were made. But the great weight of the authorities is to the effect that unwillingness to receive back the deserter is not material, where it is not disclosed to the deserter, or manifested in any way so as to constitute consent to the separation. *Monteath* v. *Monteath,* 51 Ill. App. 126 ; *Ford* v. *Ford,* 143 Mass. 578. But the best authority is that hypothetical unwillingness is too indefinite a basis for action in such cases, and that the unwillingness proper to be considered in this connection is the unwillingness evidenced by the refusal of an actual offer of reconciliation. *Ford* v. *Ford,* 143 Mass. 578 ; *Winchcombe* v. *Winchcombe,* 8 Scotch Ses. Cas. 726.

3. What we have said in regard to the appellant's second proposition will suffice to dispose of the third proposition also. If, as we hold, the institution of a suit by the appellee, after the appellant's wilful desertion and abandonment of him, to have the marriage between him and the appellant declared null and void, was not sufficient to convert the desertion and abandonment into justifiable separation for the time of the pendency of the suit, it necessarily follows that this time is not to be deducted from the period of separation so as to reduce the period of wilful desertion and abandonment within or below the limit of two years. We find nothing in the record to interrupt the continuity of the period of wilful desertion and abandonment, initiated on August 10, 1895, by the departure of the appellant on that day from the appellee's home, without legal justification.

We are of opinion that there was no error in the decree appealed from, and that the decree should be *affirmed. But it seems to be proper, under the circumstances, that the cost of the appeal should be paid by the appellee. And it is so ordered.*