ELIZABETH CSANYI, petitioner,

*v.*

STEPHEN CSANYI, defendant.

[Decided July 30th, 1921.]

1. A constructive desertion is one where an existing cohabitation of the parties is put an end to by misconduct of one of them, provided such misconduct is itself a ground of divorce *a vinculo* or *a mensa;* and it is not a necessary ingredient in constructive desertion that the husband shall entertain, in connection with his acts of cruelty, any settled purpose to drive his wife from him; it is enough if such is the natural consequence of his acts.

2. After years of extreme cruelty by the defendant toward the petitioner, he, on the night of January 19th, 1918, came home drunk and ordered her to become a domestic servant, so as to earn money for him, which she declined to do, saying that she had never been out at service but would work in a factory; whereupon he struck her and she ran away to save herself, falling downstairs and sustaining injury; she managed, however, to go immediately thereafter to a justice of the peace and swore out a warrant for her husband's arrest; the justice sent an officer back to the house with her, who admonished her husband not to molest her again, and he appears not to have done so; that night (the only one in which she thereafter remained under the same roof with him), she slept apart from him; early the next morning defendant was arrested upon the warrant isssued on his wife's complaint and lodged in jail; he was indicted, tried and convicted and sentenced to a term in the state prison, which he served; his incarceration from the time of his arrest to the time of his discharge from prison being twenty months; the separation thus brought about was a constructive desertion of the petitioner by the defendant, commencing at the time she fled from the assault and battery; the separation, thus occasioned, at the expiration of two years after its commencement, ripened into a cause for divorce

for constructive desertion, notwithstanding that during a portion of such time the defendant was restrained of his liberty by being incarcerated in prison ; and this in virtue of the provisions of the Divorce act (Revision of 1907), section 31.

3. After separation caused by the cruel conduct of a husband, it is his duty to reform his habits, manifest his reformation. seek out his wife and apply for restoration of marital relationship, giving her reasonable assurance of his sincerity and her probable safety in resuming cohabitation with him ; this the defendant did not do, and his desertion, therefore, persisted.

4. Section 31 of the Divorce act (Revision of 1907), which provides that willful and obstinate desertion shall be regarded and held to be continued within the meaning of that act, notwithstanding that after such desertion is begun the deserting party shall be imprisoned, &c., construed and applied.

5. *Wolf* v. *Wolf, 38 N. J. Eq. 128*, and *Hyland* v. *Hyland, 55 N. J. Eq. 35*, distinguished.

6. On the facts of this case—*Held*, that the wife is entitled to a divorce for the husband's desertion.

On final hearing *ex parte* on master's report in divorce.

*Mr. William Reich,* for the petitioner.

WALKER, CHANCELLOR.

This is a suit for divorce for desertion. The defendant did not answer and the case was referred to a special master who took depositions and filed an adverse report. The petitioner excepts, filing three several exceptions when only one should have been filed. See *McCauley* v. *McCauley, 88 N. J. Eq. 392;* also *Byrne* v. *Byrne, 93 N. J. Eq. 5.* A proper exception may be spelled out of the third and last one pleaded by the petitioner.

The petition in this case alleges constructive desertion, counting upon extreme cruelty, which is abundantly proved. For a better understanding of the decision arrived at it is proper to state succinctly when and how the separation of these parties came about. They were married in 1910, and for years the defendant was extremely cruel to the petitioner, often beating her, cursing her and calling her a whore, &c. On the night of January 19th, 1918, the defendant came home drunk and ordered his wife

to become a domestic servant so as to earn money for him, which she declined to do, saying she had never been out at service but would work in a factory. Whereupon defendant struck petitioner and she ran out to save herself, falling downstairs and sustaining injuries from which she was still suffering at the time of the taking of the testimony. She managed, however, to go immediately thereafter to a justice of the peace and swear out a warrant for her husband's arrest. The justice sent an officer back to the house with her, who admonished her husband not to molest her again, and he appears not to have done so, probably through fear of the law. That night (the last she spent under the same roof with her husband) she slept apart from him. Early the next morning he was arrested upon the warrant issued on his wife's complaint and lodged in the Middlesex county jail. He was indicted, tried, convicted by a jury and sentenced to a term in the state prison, which he served, his incarceration from the time of his arrest to the time of his discharge from prison being twenty months. The separation thus brought about was a constructive desertion of the petitioner by the defendant, commencing at the time she fled from the assault and battery.

The master reported that the desertion was not a constructive one; that the petitioner would have been justified in leaving the defendant, but that she did not do so by any act of hers; and that the law of New Jersey does not permit the time a defendant is confined in a penal institution to be considered as part of the time of a willful, continued and obstinate desertion if the petitioner had not left the defendant at the time of his incarceration.

A constructive desertion is one where an existing cohabitation of the parties is put an end to by misconduct of one of them, provided such misconduct is itself a ground of divorce *a vinculo* or *a mensa.* *Bid. N. J. Div. Prac. (2d ed.) 79,* and cases cited. It is not a necessary ingredient in constructive desertion that the husband shall entertain in connection with his acts of cruelty any settled purpose to drive his wife from him. It is enough if such is the natural consequence of his acts. *McVickar v. McVickar, 46 N. J. Eq. 490, 493.* Of course, this wife would have been entirely justified, as the master says, in leaving the defendant and never returning to him. She might, on the night of the

last assault and battery, after leaving the house, gone to some other place and there remained away from him, and he would, unquestionably, have been the deserter. She did not, however, have to do that. She had a right to return to her home, and it was her duty to do so, where two sons, the younger aged three years, remained with her drunken and vicious husband. As already stated, she slept apart from her husband that night, and he was arrested and taken away early the next day. In my opinion, a constructive desertion of the petitioner by the defendant occurred at the time of his assault and battery upon her on the night before his arrest. The wife is not to be blamed, but commended, for invoking the process of the law against her brutal husband. Her swearing out the warrant for him was intended by her to cause his incarceration for her protection. It was legally the equivalent of her separating herself from him without having him arrested.

Desertion can exist while the spouses are living in the same house. See *Rector* v. *Rector, 78 N. J. Eq. 386.* In that case, Vice-Chancellor Garrison pertinently remarks (at *p. 407*) that when spouses are merely living under the same roof in the same relationship that could exist between a man and his housekeeper, or a woman and her boarder, a condition in which the fact that she is the wife and he is the husband is of no consequence whatever in their relationship and method of living together, desertion exists, and the one who has caused the situation against the will of the other is the offender.

Now, we have an act of the legislature continuing a desertion, already begun, while the offender is in prison. In *Porter* v. *Porter, 82 N. J. Eq. 400,* I had occasion to construe that statute, being section 31 of the Divorce act (Revision of 1907). It provides that willful and obstinate desertion shall be regarded and held to be continued within the meaning of that act, notwithstanding that after such desertion is begun the deserting party shall be imprisoned, &c., and I held (at *p. 403*) that the very object of this section is to make a desertion thereby continued, both willful and obstinate, during its continuance. Otherwise, there would appear to be no occasion for the act. A desertion would necessarily be physically continued during the period of the de-

fendant's imprisonment, and, as we know, not only must the desertion continue, but also be willful and obstinate during the period of continuity to enable the offended spouse to obtain a divorce. Therefore, it is, that the legislature intended that that which would be continued during imprisonment was the willful and obstinate character of the desertion. It seems to me that this is obvious. A willful and obstinate desertion is the kind of desertion that is continued by the very terms of the act. Unless this be so, as already remarked, the act would be apparently purposeless.

Section 31 of the Divorce act (Revision of 1907) does not prescribe that any length of time must elapse prior to the imprisonment of the defendant after an actual or constructive desertion has commenced, in order to make its provision operative against him; only that the desertion shall have begun. The more or less actual separation in this case, which amounted to constructive desertion, had begun about ten hours before the arrest and incarceration of the defendant. It might have been for much less time and still have constituted desertion. An analogy may be drawn from the time required to premeditate and deliberately commit a murder. The Crimes act (*Comp. Stat. p. 1780 § 107*) provides, *inter alia*, that willful, deliberate and premeditated killing shall be murder in the first degree. "By 'deliberately' and 'premeditation,' however, the law does not mean any particular length of time need intervene between the formation of the purpose to kill and its execution. It is not necessary that the deliberation and premeditation shall continue for a day, or an hour, or a minute. It is enough that the design to kill be fully and clearly conceived in the mind and purposely and deliberately executed." *State* v. *Zdanowicz, 69 N. J. Law 619* (at *p. 626*). The intention to desert, like the design to kill, necessarily takes some appreciable time in its conception. I make no doubt that if a husband brutally assaults his wife, and immediately after the attack she causes his arrest for her protection, that she may treat the separation so caused as a constructive desertion on the husband's part, commencing from the time of the assault. Whether she would succeed in her suit would, of course, depend

upon all the facts of the case; what I say is, that the separation thus caused would be a sufficient commencement of the desertion.

The case of *Wolf* v. *Wolf, 38 N. J. Eq. 128* (*Chancellor Runyon, 1884*), in which it was held that willful and obstinate desertion ·did not continue through a term· of imprisonment, is clearly to be distinguished from the case at bar, because at the time of the *Wolf Case* there was no statute making such desertion, already begun, continued through a period of imprisonment; and the case of *Hyland* v. *Hyland* (*Chancellor McGill, 1896*), *55 N. J. Eq. 35,* is also to be· distinguished from the case at bar, in that the act of April 1st, 1887, which was in force when that case was decided, only permitted the tacking together of two periods of desertion, one before defendant's imprisonment and the other after his discharge, so as to afford ground for divorce.

The supplement to· the Divorce act of April 1st, 1887 (*Gen. Stat. p. 1273 § 37*), which was in force when Chancellor McGill wrote the opinion in the *Hyland Case,* was expressly repealed in the act to repeal sundry statutes (*P. L. 1902 p. 268*) ; but had it not been, it would have been repealed by implication by the Divorce act (Revision of 1902), because the Revision of 1902 covered the whole subject of statutory divorce law, and while it did not contain an· express repealer, yet section· 25 of that Revision, now section 31 of the present Divorce act (Revision of 1907), is repugnant to the act of April 1st, 1887, and repeal was thereby worked. See *Mersereau* v. *Mersereau Co.,· 51 N. J. Eq. 382*

After the separation caused by the cruel conduct of the husband, it is his duty to reform his habits, seek out his wife and apply for restoration of the marital relationship, giving her reasonable assurance of his sincerity and her probable safety in resuming cohabitation with him. See *Lister* v. *Lister, 65 N. J. Eq. 109; Jerolaman* v. *Jerolaman, 54 Atl. Rep. 166.* He must manifest his reformation. *McVickar* v. *McVickar, supra.* It appears that the defendant in the case before me wrote his wife two letters while in prison, the contents of which were not brought out in· the evidence, and after he was released he sought her out, but she evaded him. Failing to secure an interview with her, he afterwards wrote her that if she did not live with him

again he was going to kill her. Therefore, not only does it not appear that he had reformed and given her reasonable assurance of the sincerity of his reformation, or manifested to her that it was probably safe for her to resume marital relations with him, but his last communication to her was one that would give her to be informed that he was the same vicious criminal that he had been, and that not only her health but her life would be in danger by resuming cohabitation with him, notwithstanding that the letters to her from prison may have expressed contrition, asked forgiveness .and pleaded for restoration of marital relations, which is assumed, in the absence of proof to the contrary.

The result reached is, that the exception must be sustained, to the end that a decree *nisi* may be granted.