Bertha **EDWARDS**, Appellant,

v.

Jesse **EDWARDS**, Appellee.

No. 9245.

District of Columbia Court of Appeals.

Submitted Oct. 23, 1975.

Decided April 29, 1976.

Max Sampson, Washington, D. C., for appellant.

Willis C. Payton, Washington, D. C., entered an appearance for appellee. No brief was filed.

Before KELLY and MACK, Associate Judges, and PAIR, Associate Judge, Retired.

MACK, Associate Judge:

Appellant-wife appeals from an order of the Superior Court dismissing her complaint for an absolute divorce on the ground of constructive desertion. (D.C. Code 1973, § 16–904(a)). At the close of all the evidence at trial, the court ruled that the evidence was legally insufficient to support a finding of constructive desertion by appellee husband.

The pertinent facts, not in controversy, are that the parties were married on February 5, 1958, and lived together, with their three children, until November 8, 1971. On that date, the husband (who previously had physically abused the wife on several occasions) was arrested after having threatened her and the children with a loaded shotgun.[1] As a result of this and a prior similar incident, the wife brought charges against him. He entered a plea of guilty to two counts of assault and battery,[2] and on February 8, 1972, he was given a 60-day suspended sentence on each count and placed on probation for one year on the condition that he avoid contact with his wife concerning marital problems. Since that time, the parties have lived apart, the wife and children having remained in the family home.

On April 18, 1974, the wife commenced this action for divorce, charging constructive desertion by the husband. The trial court, in reliance on *Hales v. Hales*, D.C. App., 207 A.2d 657 (1965), determined that the elements of constructive desertion were not present because the wife had never left the marital abode.[3] In our opinion the court erred.

In *Hales, supra*, the trial court had granted an absolute divorce on the ground of constructive desertion to a husband who did not return to his residence once he had found himself "locked out" by his wife. This court reversed for insufficient evidence. In describing the *kinds* of conduct which would have supported the decree (including cruelty arising from physical abuse), the court noted that:

---

1. Apparently, the husband came home that evening after having been drinking. He fought with the wife, threatened her and the children, and then loaded his shotgun. He forced an older daughter's boyfriend to leave the house, and, gun in hand, ordered the others to remain with him. The wife later stated that she had been in fear for her life. The police, who had been summoned by the boyfriend, arrived while the husband was holding the shotgun and immediately arrested him.

2. At trial, the husband denied that he assaulted the wife on the prior occasion and stated that he pled guilty to both counts of assault and battery in order to be released from jail.

3. The court also concluded that the wife was not entitled to a divorce on the ground of desertion since the husband had not voluntarily separated from her.

Desertion contemplates a voluntary separation of one party from the other, without justification, an intention not to return, and the absence of consent or connivance of the other party. . . . [Citations omitted.] For the desertion to be "constructive" in character, one spouse must show misconduct by the other spouse *forcing* the former to abandon the marital abode. If such misconduct is shown the spouse remaining in the marital abode is treated, in the eyes of the law, as the deserter. [Emphasis supplied.] (*Id.* at 658–59.)

Focusing upon the last two sentences of this language, the trial court in the instant case determined that departure from the marital abode is an essential element of constructive desertion. We read this language as contributing nothing more than an attempted illustration of the degree of misconduct necessary to support constructive desertion under the factual circumstances of *Hales*.

■ Although the term "marital abode" has found its way into many of our cases involving constructive desertion, in each case, as in *Hales*, the factual circumstances were such that the party charging constructive desertion had left the conjugal domicile. *See Roberson v. Roberson*, D.C. App., 297 A.2d 769 (1972); *Haberman v. Haberman*, D.C.App., 267 A.2d 818 (1970); *Grollman v. Grollman*, D.C.App., 220 A.2d 330 (1966). Similarly, the term "marital abode" has found its way into cases involv-

ing desertion. *See McEachnie v. McEachnie*, D.C.App., 216 A.2d 169, 170 (1966); *Novak v. Novak*, D.C.App., 212 A.2d 341, 342 (1965); *Stephenson v. Stephenson*, D.C.App., 191 A.2d 248, 249 (1963). Under no circumstances can any of these decisions be read as holding that departure from a "marital abode" is necessary for a finding of desertion.[4]

■ Desertion is defined as "a voluntary separation of one party from the other, without justification". *McEachnie v. McEachnie, supra*, at 170, *Hales v. Hales, supra* at 658. On the other hand, constructive desertion is a doctrine fashioned by the courts to provide relief for a party who justifiably separates from his or her spouse.[5] The essential elements of constructive desertion are that one spouse bring about a separation from the other spouse because of the latter's misconduct. The misconduct which will support a finding of constructive desertion consists of *inter alia*, ". . . [c]ruelty arising from physical abuse . . . or other acts which affect and impair the health and make life together intolerable . . . ." *Grollman v. Grollman, supra* at 332, citing *Hales v. Hales, supra* at 659.

In this case, the husband engaged in misconduct which forced the wife to terminate the marital relationship. Because of his acts of cruelty and physical abuse, she had two practical alternatives: she could either leave the family home with the children or enlist the aid of the police and the courts

---

4. *Cf. Boyce v. Boyce*, 80 U.S.App.D.C. 355, 153 F.2d 229 (1946). In *Boyce*, the court held that parties who lived separately, yet in the same home, could obtain a divorce on the ground of voluntary separation, stating that "[t]he essential thing is not separate roofs, but separate lives." *Id.* at 356, 153 F.2d at 230. *Accord, Hawkins v. Hawkins*, 89 U.S.App.D.C. 147, 191 F.2d 344 (1951).

5. *See* H. Clark, Domestic Relations 337–39 (1968). Justification for leaving a spouse is a traditional defense to the charge of desertion. *See, e. g., Underwood v. Underwood*, 50 App.D.C. 323, 271 F. 553 (1921); *Hitchcock v. Hitchcock*, 15 App.D.C. 81

(1899). Under the doctrine of constructive desertion, the conduct which justified the separation is labeled as desertion, thus enabling the innocent party to sue for divorce. *See* Clark, *supra*. In this jurisdiction, constructive desertion was recognized as a ground for divorce first by the courts and later by statute. Act of September 29, 1965, Pub.L. No. 89–217, § 2, 79 Stat. 889 (codified at D.C.Code 1973, § 16–904(a)). *See Schreiber v. Schreiber*, D.C.Mun.App., 139 A.2d 278 (1958); *Scott v. Scott*, D.C.Mun. App., 137 A.2d 722 (1958). *See also Slone v. Slone*, D.C.Mun.App., 134 A.2d 585 (1957).

in protecting herself and the children from his assaults. Had she terminated the marriage by leaving the marital abode, it has not been disputed that she would have been entitled to a divorce on the ground of constructive desertion. We see no reason why she should be denied a divorce on that ground simply because she did not flee, but instead chose to file charges with the police with the intent of having the husband arrested and permanently restrained from living with her.[6]

While there are no cases in this jurisdiction involving this precise issue, a very similar situation arose in *Csanyi v. Csanyi*, 93 N.J.Eq. 11, 115 A. 76 (1921). In that case, a wife went to the police after she had been attacked by her husband and swore out a warrant for his arrest. She then returned to their home, where the husband was subsequently arrested. He was convicted of assault and imprisoned for 20 months. The wife's petitition for divorce on the ground of constructive desertion was denied by a special master in part because "she did not [leave him] by any act of her own." *Id.* at 13, 115 A. at 77. The court, holding that she was entitled to the divorce, stated:

> [A] constructive desertion of the petitioner by the defendant occurred at the time of his assault and battery upon her on the night before his arrest. The wife is not to be blamed, but commended, for invoking the process of the law against her brutal husband. Her swearing out the warrant for him was intended by her to cause his incarceration for her protec-

tion. *It was legally the equivalent of her separating herself from him . . . ..* [Emphasis supplied.] (*Id.* at 14, 115 A. at 77.)

We find the reasoning of *Csanyi* to be persuasive. In this case, appellant brought about a separation for at least one year by voluntarily filing charges against her husband. Because of his cruelty, her action was justified and perhaps even necessary for her protection. We hold that she is entitled to a divorce on the ground of constructive desertion.[7]

Accordingly, the case is reversed with instructions that a judgment granting a divorce on the ground of constructive desertion be entered in favor of appellant.

*Reversed and remanded for further proceedings not inconsistent with this opinion.*

PAIR, Associate Judge, Retired (dissenting):

The majority holds contrary to well established law that a wife, subjected to cruelty by her husband, is entitled to a divorce on the ground of constructive desertion even though she remains in the marital abode and he is required to leave it.[1] Thus in reversing the order of the trial court which dismissed the complaint and in directing the entry of a judgment for absolute divorce on the ground of constructive desertion, the majority overrules, in effect, an unbroken line of decisions of this court. *Haberman v. Haberman*, D.C.App., 267 A. 2d 818 (1970); *Hannon v. Hannon*, D.C. App., 220 A.2d 94 (1966); *Grollman v.*

---

6. Testimony revealed that the wife, in fact, had fled with the children to her adult daughter's home on a number of occasions, only to be followed, harassed, and physically assaulted there by her husband.

7. By this holding we, of course, do not imply that a separation involuntarily imposed upon husband and wife would support a charge of constructive desertion. The aggrieved party must lawfully bring about the separation by some voluntary act occasioned by the other's misconduct.

1. By D.C.Code 1973, § 16–904(a) it is provided that:
   A divorce from the bond of marriage . . . may be granted for . . . actual or constructive desertion for one year, voluntary separation from bed and board for one year without cohabitation . . . .. A legal separation from bed and board also may be granted for cruelty.

*Grollman*, D.C.App., 220 A.2d 330 (1966); *Hales v. Hales*, D.C.App., 207 A.2d 657, 658–59 (1965); *Potts v. Potts*, D.C.Mun. App., 171 A.2d 263 (1961); *Schreiber v. Schreiber*, D.C.Mun.App., 139 A.2d 278 (1958). *See also Roberson v. Roberson*, D.C.App., 297 A.2d 769, 770 (1972); *cf. Collins v. Collins*, D.C.Mun.App., 156 A.2d 676 (1959).

These decisions either recognize or declare the rule to be that a divorce on the ground of constructive desertion may be granted only upon a showing that by reason of the cruelty of one spouse the other spouse was compelled for his or. her own safety to leave the family home and make a home elsewhere. In *Hales v. Hales, supra* at 658–59, a husband sought and was granted a divorce on the ground of constructive desertion. This court reversed saying:

> Desertion contemplates a voluntary separation of one party from the other, without justification, an intention not to return, and the absence of consent or connivance of the other party. Desertion as a ground for divorce has been broadened in this jurisdiction to include "constructive" desertion. For the desertion to be "constructive" in character, one spouse must show misconduct by the other spouse forcing the former to abandon the marital abode. If such misconduct is shown the spouse remaining in the marital abode is treated, in the eyes of the law, as the deserter. . . . [Citations omitted.]

Whatever may be said of this long standing rule, it is beyond any question now that because of the strictures of *M. A. P. v. Ryan*, D.C.App., 285 A.2d 310 (1971),

a division of this court may not alter or change the rule. *See also Schreiber v. Schreiber, supra* at 279, where it was said: "A rule of long standing should not be disturbed in the absence of a strong showing of its unsoundness and injustice."

The majority says: "Under no circumstances can any of these decisions be read as holding that departure from a 'marital abode' is necessary for a finding of desertion." [2] The short and obvious answer to this is that the subject of concern in the case at bar, as it was in the cases cited above, is constructive desertion and the elements of proof required to establish it. *See Hales v. Hales, supra.*

*Hawkins v. Hawkins*, 89 U.S.App.D.C 147, 191 F.2d 344 (1951), and *Boyce v. Boyce*, 80 U.S.App.D.C. 355, 153 F.2d 229 (1946), upon which the majority so strongly relies, are distinguishable on their facts. In each case the proof was that the parties voluntarily lived separate and apart in the family home by reason of which it was held that a divorce on the ground of voluntary separation was warranted. In the case at bar appellant could have but did not seek a limited divorce on the ground of cruelty or legal separation from bed and; board because of such cruelty. *See* D.C. Code 1973, § 16–904(a).

The majority's reliance upon *Csanyi v. Csanyi*, 93 N.J.Eq. 11, 115 A. 76 (1921), is odd. While in that case the facts were somewhat similar, the decision was controlled by a state statute which provided in part that a willful "desertion shall be regarded . . . to be continued . . . notwithstanding that . . . the deserting party shall be imprisoned . . . ." [*Id.* at 77.] Of course as a general rule,

---

2. Desertion contemplates a voluntary and intentional abandonment of one spouse by the other, without cause or justification, without consent of the spouse abandoned and without any intention to return. The separation and intent must concur. *Novak v. Novak*, D.C.App., 212 A.2d 341 (1965); *Oatley v. Oatley*, D.C.Mun.App., 161 A.2d 834 (1960); *Marcey v. Marcey*, D.C.Mun.App., 130 A.

2d 918, 919 (1957); *Blandy v. Blandy*, 20 App.D.C. 535 (1902). In the case at bar the wife not only consented to the husband's absence from the home but also conceded that he did not voluntarily leave it. Interestingly enough, my distinguished colleagues concede as they must, "that a separation involuntarily imposed . . . would [not] support a charge of constructive desertion."

there can be no competent or independent will when the separation of one spouse is compelled by superior authority. *See Dorsey v. Dorsey*, 94 F.Supp. 917, aff., 90 U.S.App.D.C. 284, 195 F.2d 567 (1952). Moreover, as the majority concedes, the *Csanyi* case is at best only persuasive authority. It cannot, therefore, stand against the imperative authority which is the District of Columbia case law cited above.

But aside from all of this, what appears almost too clear for discussion is that meaningful review of this record has been frustrated by the trial court's failure to make, as required by Super.Ct.Dom.Rel.R. 52(a),[3] written findings of fact and separate conclusions of law. For example, the trial court made no written findings respecting:

1. The effect, if any, on the issue of constructive desertion, of appellee's plea of guilty to an alleged assault and battery upon appellant.

2. The effect, if any, on such issue of the court order placing appellee on probation for one year upon the condition that he avoid contact with appellant on marital problems.

3. Whether, assuming a constructive desertion commenced upon appellee's alleged assault and battery upon appellant, the running of the statutory period was interrupted by the court order which restrained appellee for one year commencing January 8, 1972 from having any contact with appellant "on marital problems."

4. Whether under her prayer for any other relief deemed proper appellant

3. The rule provides:
   In all actions tried upon the facts the court shall make written findings of fact, separate conclusions of law . . . . Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . . If an opinion or memorandum of decision is filed

was entitled to a divorce on the ground of voluntary separation.[4]

True it is that the trial court made oral findings (1) that consistent with appellant's testimony, appellee did not voluntarily leave the home and (2) that appellant did not abandon the home but continued to reside therein after the appellee's plea and sentence. In addition, there was a specific written finding that "[T]here is no showing that defendant [appellee] constructively or otherwise deserted the appellant or voluntarily separated from her . . . .." There was also the written order dismissing the complaint.

In my opinion Super.Ct.Dom.Rel.R. 52(a) contemplates more from the trial court than appears from this record. Even before the adoption of Super.Ct.Dom.Rel. R. 52(a), this court admonished that findings of fact and conclusions of law are a prerequisite to meaningful judicial review. *See O'Lea v. O'Lea*, D.C.Mun.App., 138 A.2d 486, 487 (1958), where the court faced with a somewhat similar factual situation was prompted to say as we should say here:

On the basis of the present record we are left to choose between conflicting inferences and to surmise what was the actual basis of the finding. Any decision by this court under the circumstances would neither do justice to the parties involved nor to the trial court. It is suggested that the trial judges make . . . unmistakably clear in all cases the exact basis of their decision.

*See also* and *compare Butler v. Butler*, D.C.App., 239 A.2d 616 (1968); *Hamilton v.*

it will be sufficient if the findings of fact and conclusions of law appear therein. . . .

4. At the trial appellant sought to amend her complaint to conform to what she insisted was evidence of voluntary separation. D.C. Code 1973, § 16–904. *See Henderson v. Henderson*, D.C.App., 206 A.2d 267, 269 (1965). It does not appear whether appellant was or was not permitted to amend her complaint.

*Hamilton,* D.C.Mun.App., 158 A.2d 677, 679–80 (1960).

Consequently, it seems to me impossible to make, responsibly, a judgment whether there was a basis in the evidence for the trial court's conclusion that appellant was not entitled to a divorce on the ground of desertion, constructive desertion, or voluntary separation.[5]

The majority says and without record support that appellee's misconduct

> forced the wife [appellant] to terminate the marital relationship. . . . [And] . . . to file charges . . . with the intent of having the husband [appellee] arrested and permanently restrained from living with her.

There were no such allegations in appellant's complaint nor was there testimony at trial to that effect and certainly the trial court made no such finding. The majority says also that appellee "(who previously had physically abused the wife [appellee] on several occasions) was arrested after having threatened her and the children with a loaded shotgun." The record shows that these statements were controverted by appellee and that the trial judge refused to make any such finding.

What points up all of this is the clear record showing that the marital relationship was interrupted not by any direct act of appellant but by the court order which required appellee to avoid contact with appellant on "marital problems" for one year commencing February 8, 1972. As the trial judge observed, the evidence was in sharp conflict as to the circumstances which provoked the order.

It is not the function of this court "to reconsider or reweigh the evidence" and this court is not permitted to make its own findings or to substitute its judgment for that of the trial court. *Patterson v. Patterson,* D.C.App., 188 A.2d 299, 300 (1963).[6]

I would not, therefore, disturb at this time the judgment of the trial court but would remand the record with directions to make and certify to this court in a supplemental record appropriate written findings of fact and conclusions of law. For all of the foregoing reasons I vigorously but respectfully dissent.

---

5. It does not escape attention that physical abuse is not always deemed a sufficient reason to terminate a marriage, particularly when children are involved. *Roberson v. Roberson, supra* at 770. *See also Chapple v. Chapple,* D.C.App., 204 A.2d 815 (1964).

6. In the discharge of its review function in any case tried without a jury, this court may review both as to the facts and the law but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it. D.C.Code 1973, § 16–904. *See Achorn v. Achorn,* D.C.Mun.App., 168 A.2d 399 (1961).