BEITHANIA W. CAMP v. JOSIAH M. CAMP.

That the husband had been an habitual drunkard for a few months ; that when drunk he was in the habit of using insulting and abusive language towards his wife, the purport of which language did not appear ; that during such period he failed to provide for the support of his wife and two children, and they were reduced to a condition of distress ; and that the wife was without apparent fault : Held not to be sufficient ground for divorce.

There can be no doubt that any acts, language, or conduct, which would amount to cruelty, under the Statute, would, instead of being excused, be aggravated by intoxication, especially if that became excessive and habitual.

Such drunkenness as totally or in a great degree disqualified the husband to discharge his marital duties or obligations ; such, for instance, as would

Camp v. Camp.

compel the wife, as in this instance, to leave her husband, would be a degree of cruelty in itself, and which, if continued for a great length of time, say three years in analogy to the time prescribed by the Statute, for abandonment, would amount in law to a ground for divorce.

In fact, if there be separation for that period, that would of itself be good cause; and though the wife may have left the husband, yet if it was for good cause, he would be regarded as guilty of the desertion.

Appeal from Harris. Tried below before the Hon. Peter W. Gray.

Suit by appellant against appellee for divorce, commenced October 22, 1856. The petition was as follows:

That heretofore, to-wit: in the month of November, A. D., 1849, she lawfully intermarried with the said Josiah, in the county of Calhoun, in the State aforesaid, and that she lived peaceably and happily with her said husband, Josiah, for several years, to-wit: from the time of her said marriage with the said Josiah, until about the month of March, 1856, and that her said husband commenced about that time a series of excesses, cruel treatment and studied vexations, and deliberate provocation, in the city of Galveston, where they lived about that time, which were incompatible with the duties of a husband, by getting drunk, and remaining in that condition for days and weeks together. And your petitioner alleges that she conducted herself towards the said Josiah, at all times, as a dutiful, loving wife, and remonstrated with him, and tried to persuade him to leave off his excessive drinking, and become toward her and his family a proper protection. But he, the said Josiah, disregarding the remonstrances and persuasions of your petitioner, persevered in his habits of intoxication and intemperance to such a degree that he would not see a sober moment from one month to another. He would bring bottles of liquor to the house in which they lived, and would drink the same in presence of your petitioner; would take the bottles of liquor to bed with him, and there would drink the same. Your petitioner alleges that he, the said Josiah, so conducted

himself toward your petitioner by neglecting to provide the necessaries of life, that she had to make a living for her said husband, and, when she would kindly ask him to again become a sober man, he would declare it was never his intention to do so ; and continue in his stupidity and intoxication. Your petitioner further alleges that the said Josiah became so loathsome and so excessive in his conduct, that your petitioner could no longer bear him ; that she was frightened by his conduct and actions, continually and could have no peace. She further alleges that he was incapacitated from his drunkenness and beastly conduct to maintain his family, and that she has two children by him, but that he wholly neglected them, and your petitioner was compelled to maintain them. She also alleges that the aforesaid abuses and excesses were continued up to the month of August, 1856, or thereabouts, when the conduct of the said Josiah was such as to render their longer living together insupportable. And your petitioner further alleges that the said Josiah left your petitioner in the city of Galveston, and came to the county of Harris about the month of August, 1856, where he is now living. Petitioner alleges that there is no community property belonging to the said Josiah and herself. She therefore sues and prays, &c.

The defendant was duly cited, but filed no answer. The evidence was as follows :

Deposition of Phœbe Crane : I am acquainted with the parties ; first knew them as my next door neighbors in Galveston. They lived together as husband and wife. I first knew them about the first of April last, (1856.) I do not know of any improper conduct on the part of either towards the other. I know nothing amiss on the part of the defendant towards the plaintiff. I did not frequent their house, and therefore had little opportunity of judging of their conduct. I never saw the plaintiff conduct herself in an improper manner towards the defendant. I have seen the defendant intoxicated, but never saw him conduct himself in any improper manner

towards his wife whilst in that State. The last time I saw defendant intoxicated he must have continued in that state four or five weeks. His habits of drunkenness appeared to increase during the summer of 1856. He did not appear at all boisterous during his drinking spells. Cannot say how often I have seen him intoxicated, probably some five or six times. I have seen plaintiff sit beside defendant and talk to him during his drunken spells, but never overheard the conversation. Her general demeanor toward the defendant was very mild. Defendant when sober appeared to be of industrious habits. They had two children, and I do not believe, from my observation, that defendant supported them in a proper manner. I lived next door to defendant and plaintiff. Defendant had the *delirium tremens* twice. I know nothing about his conduct while in that state, but what I have already stated.

The defendant left the plaintiff during an election either for county or State officers, but I cannot recollect in what month. He left her in their house. The family appeared at that time to be in distress, and I think defendant left them entirely unprovided before. I would suppose, from seeing him so frequently intoxicated, that his conduct was entirely insupportable. I know nothing more than I have already stated.

Deposition of E. M. Crane. I am acquainted with both plaintiff and defendant; have known them for about three years; knew them first at Indianola. They were man and wife. I lived in the same house with them in March and April last. During most of this period, defendant was intoxicated, during which time he was very disagreeable, and it was unpleasant to sit at table with him. Plaintiff appeared very patient with defendant, and would frequently try to prevail apon him to abandon his drinking habits. The plaintiff always conducted herself with great propriety, and was generally very kind to him. I do not know that defendant ever abused his wife, except by words; he would at times use very abusive and insulting language to her. His habits were those of intoxica-

tion and drunkenness, in which state he would continue three
or four days, and, at times, for a week. These habits increased
during the summer of 1856, and towards the latter part of his
residence here, he appeared to be continually intoxicated.
Cannot say how often I have seen defendant intoxicated, but
suppose at least two-thirds of his time. I have frequently
heard the plaintiff remonstrate with defendant, but he seldom
replied. So far as I could see plaintiff always conducted her-
self in a kind and gentle manner toward her husband. He
was not of industrious habits, nor was it possible for him to be
so, as he was intoxicated nearly always ; at least two-thirds of
his time. They had two children living with them. I do not
think the defendant properly supported them. They lived in
Galveston. During the month of July and up to the 1st of
August last, defendant was intoxicated during the entire time,
and was very loathsome, and had the *delirium tremens.* I was
always afraid to go near him while in this condition. I was
absent during the month of August and returned home about
the first of September. At this time the defendant was not at
home nor did he return afterwards. Plaintiff, on my return,
was without money or means, and herself and children were
in great distress. I should suppose the treatment of defendant
to plaintiff was insupportable.

C. H. Hanson, the brother of plaintiff, testified that the de-
fendant was an habitual drunkard, and that during the months
of June, July and August, 1856, the defendant was continu-
ally intoxicated, and that during those months he was very
abusive in his language toward the plaintiff, of which facts he
was informed by plaintiff ; that he, defendant, did not provide
for his wife and children ; that plaintiff had two children and
defendant did not support them ; that defendant was not an
industrious man, nor could he be so on account of his habits of
drinking, but otherwise, if he had been a sober and temperate
man ; that the plaintiff and defendant were man and wife ; that
witness sent to Galveston for plaintiff and brought her to

Camp v. Camp.

Houston at her request, and that she was destitute when he brought her to Houston ; that one of the children was the issue of defendant. The defendant was disregardful of the matrimonial obligation.

Verdict that the jury found all the material allegations in the petition to be true. Judgment for the defendant notwithstanding the verdict ; and appeal by plaintiff.

*W. P. Hamblen,* for appellant. If drunkenness itself cannot be defined as legal cruelty, or as an outrage upon the person or feelings of the wife, would not continual intoxication and drunkenness to such a degree that it incapacitates the husband for performing the matrimonial duties and obligations ; bringing upon himself the frightful disease of *delirium tremens* ; becoming loathsome and offensive to every person ; lying for days and weeks in the gutter ; his wife and children without subsistence, and finally abandoning them ; leaving them in destitution and distress to seek their living among, and be dependant upon friends or strangers, for their existence ; would not all this be such cruelty, and excesses, and outrages as contemplated by the Statute ; cruelty not only to the feelings, but to the person, and even endangering life itself? (Sheffield v. Sheffield, 3 Tex. R. 79 ; Wright v. Wright, 6 Id. 3.)

HEMPHILL, CH. J. This is a suit by the wife for a divorce. She alleges that they lived for years happily together, and complains, in substance, that he became, from March to August, 1856, almost an habitual drunkard ; that he neglected to provide for the family, and she had to make a living for him ; that her attempts and entreaties that he would reform, were ineffectual ; that he became so loathsome and excessive in his conduct, that the plaintiff could not bear with him ; that

she was frightened by his conduct and actions, and could have no peace; that he neglected to maintain her two children, and left the plaintiff about the first of August, 1856.

The proof was pretty conclusive, that he was drunk during the period mentioned, about two-thirds of his time; and at times would use very abusive and insulting language to his wife. But this language is not stated, and neither the jury nor Court could judge of the extent or character of the insult. Whether the language was that of mere rudeness, or charged her with a want of purity, or infidelity to her conjugal relations; whether it was only grossness of behavior, or that which aggravated by his brutal intoxication, would amount to the cruel treatment which, under the Statute, would be ground of divorce, we cannot judge, as we have only the opinion of the witness that it was abusive and insulting.

The gravamen of the complaint in this case, and the substance of the legal proof are, that the husband had become almost an habitual drunkard for a few months, and that he neglected to provide for his wife and family.

If cruel treatment necessarily includes the idea of bodily harm, then clearly neither occasional nor habitual intoxication would of itself come within the definition. In Mason v. Mason, 1 Ed. Chan. Rep. p. 284, the Court said that it could not add to the deplorable consequences of intemperance, by making it, however excessive, the sole cause for severing the conjugal tie.

There can be no doubt that any acts, language, or conduct, which would amount to cruelty, under the Statute, would, instead of being excused, be aggravated by intoxication; especially if that became excessive or habitual. Such drunkenness as totally, or in a great degree disqualified the husband to discharge his marital duties or obligations, such, for instance, as would compel the wife, as in this instance, to leave the husband, would be a degree of cruelty in itself, and which, if continued for a great length of time, say three years in analogy to

the time prescribed by the Statute for abandonment, would amount in law to a ground for divorce.

In fact, if there be a separation for that period, that would of itself be good cause : and though the wife may have left the husband, yet if it was for good cause, he would be regarded as guilty of the desertion. But in this case the intoxication was but for a few months, and the facts, taken together, are not good ground for divorce.

Judgment affirmed.