Rie vs. Rie.

---

## RIE VS. RIE.

1. DIVORCE: *Not granted on pleadings, etc.*
A divorce will not be granted on a demurrer to a bill, or upon a failure to answer, or upon admissions in an answer, or alone upon declarations or admissions of the defendant, proven by depositions or otherwise.

2. SAME: *Non-cohabitation sufficient for.*
Actual abandonment of matrimonial cohabitation, without reasonable cause, for the period of one year, intentional on the part of the wife, is cause for divorce, notwithstanding she make occasional visits to the house of her husband to look after her children, and while there engage in domestic duties.

3. SAME: *Not granted on evidence of parties. Conflict between.*
The uncorroborated evidence of the parties, though admissible for what it is worth, is not sufficient to authorize a divorce, notwithstanding they agree in their statements. Where there is a conflict in their testimony that of the defendant is deemed of greater weight.

4. SAME: *Pleading. Allegations must be specific.*
Where the causes alleged for divorce are not sufficiently specific, the court should, on motion of the defendant, compel the plaintiff to make them so.

APPEAL from *Mississippi* Circuit Court in Chancery.
Hon. L. L. MACK, Circuit Judge.
*Lyle*, for appellant.

ENGLISH, C. J. This was a bill for divorce commenced in the circuit court of Mississippi county, on the twenty-second of September, 1877, by W. C. Rie against Polly Ann Rie.

Upon the bill, answer and depositions, the court below refused a divorce and dismissed the bill.

The causes of divorce, and the primary facts constituting them, are not separately and distinctly stated in the bill, as they should have been to make an orderly pleading, convenient to be answered.

Taking all of the allegations of the bill together, however, we presume appellant intended to rely upon three of the statutory causes of divorce:

1. That appellee willfully deserted and absented herself from appellant for the space of one year, without reasonable cause.

2. That she was guilty of such cruel and barbarous treatment of him as to endanger his life.

3. That she offered such indignities to his person as to render his condition intolerable.

The onus of proving these charges, or some one of them, was upon appellant, who alleged them as causes for divorce, which he sought.

A divorce will not be granted on a demurrer to a bill, or upon a failure to answer, or upon admission in an answer, or alone upon declarations or admissions of the defendant, proven by depositions or otherwise, because the public, and not the parties only, are interested in such suits. *Jacob v. Bob, 18 Ark., 410; Gantt's Dig., secs. 2200, 2201; Jordan v. Jordan, 17 Ala., 466.*

I. The bill alleges that, about the first of March, 1876, appellee willfully deserted appellant, without any reasonable cause, and persistently refused to return to him.

Appellee, in her answer, admits that she did leave his house about the first of March, 1876, but denies that she then, or at any other time, willfully deserted him without any reasonable cause; but, on the contrary, alleges the truth to be that she left him at the time above mentioned, under the influence of well grounded fear that he would inflict upon her some enormous bodily harm, he having, a short time prior thereto, raised a chair over her head, saying he would "dash her infernal old brains out;" and that, at another time, he advanced upon her with a drawn butcher-knife, threatening her life; and that she had, often, during the past year, been at his house and engaged in her usual avocation, as his wife, and the mother of her children, and had not then, nor has she now [the time of answering], any thought or intention of desertion.

The depositions conduce to prove that appellee left the house of appellant about the time stated in the bill, and did not, after that, live with him as a wife. Most of the time she was absent, and stayed with a married daughter and at other houses in the neighborhood. She occasionally returned to the house of appellant and remained for some days, aiding her daughter in domestic matters. When there, but little was said between her and her husband, and they occupied different rooms at night.

There was doubtless, an actual cessation of the matrimonial cohabitation between the parties for the period alleged in the bill, which appears to have been intentional on the part of the wife, and this was cause of divorce, notwithstanding she made occasional visits to the house of her husband, to look after her children, and while there engaged in domestic duties, unless she had reasonable

cause for such abandonment of the matrimonial cohabita-
tion. *Bishop on Marriage and Divorce, secs. 506-7, etc.*

Before the final separation, though they had occasional
quarrels, the general treatment of the husband appears to
have been good, and, when she was not in a tantrum, her
conduct, it seems, was lady-like and affectionate. But
when her temper was aroused, she gave the "old man [to
use the language of one of the witnesses] *Hail Columbia.*"

The witnesses are not all in harmony as to whether the
husband or the wife usually commenced such quarrels, or
occasioned them; a majority of them, however, were dis-
posed to lay the blame on the wife. But it is not material
to decide which was more at fault in these family jars.
The real question is, was it proven that the desertion of
the wife was willful and without reasonable cause.

The practice now in this state is to admit the deposi-
tions of the parties in suits for divorce for what they are
worth, but not to grant a divorce upon the uncorroborated
testimony of the parties. *1 Wharton Evidence, 433.*

In this case the depostions of the parties were taken,
and read without objections, as to competency.

The wife testified as follows: "In 1876, when I was
very ill, he (appellant) never came about me to ask after
and provide for my wants—would not even send after a
doctor for me. On one occasion, he drew a chair on me
and threatened to dash out my infernal old brains; on
another, he threatened to pitch me out the door and break
my neck; on another, he threatened to come in and beat
me to death; on another, he came towards me with a
butcher knife in his hand, threatening me some bodily
harm—I do not remember what, for I was so badly fright-
ened at the time."

Rie vs. Rie.

These are the causes stated by her for the desertion, or for refusing to live with him as a wife.

It has been held, subject to some qualifications, that *reasonable cause*, which, within the divorce statutes, will justify one of the married parties in abandoning the other, must be such conduct as could be made the foundation of a judicial proceeding for divorce. *Bishop on Mar. and Div., sec. 526,* and cases cited.

If the chancellor believed the above statement of the wife, her desertion was justifiable, and the husband was rightly refused a divorce.

Appellant, in his deposition, states, in general terms, that he always treated appellee well, and gave her no just cause for desertion. He admits raising a chair over her head, with intention to strike her, but denies advancing upon her in a threatening manner, with a drawn butcher-knife, as stated by her, and is silent as to the other specific charges made, as above, by her against him.

In conflicts between the two depositions, hers must be deemed of greater weight, because he seeks to obtain a divorce by his own testimony, and she attempts to defeat it by hers. He must establish alleged causes of divorce by corroborating evidence. In getting at the truth in relation to private scenes, quarrels and injuries between husband and wife, unwitnessed by others, it may be well to admit the testimony of the parties in divorce cases; but because of the rule, founded on public policy, that a divorce will not be granted upon the unsupported testimony of the party seeking it, it necessarily follows that the greater weight must be given to the party opposing it, where their depositions are in conflict. Nor in order to prevent collusion will a divorce be granted where parties agree in their statement,

unless the cause or causes alleged for divorce are proven *aliunde:* in other words, unless the testimony of the complaining party is supported by other evidence satisfactory to the court, because of the public interest in marriage and divorce.

II.   The second cause of divorce is not well alleged in the bill.   It is not alleged in the language of the statute, nor in words of like purport, nor are the primary facts alleged to make out the statutory cause for divorce, that defendant was guilty of such cruel and barbarous treatment of complainant as to endanger his life.

The only portions of the bill that may be supposed to have been intended to make a second charge and specifications, are as follows:

" That she often threatened his life, and at one time extracted from his medicine chest a bottle of strychnine, she knowing the same to be a deadly poison, for the purpose of taking his life; that she treated him with great harshness and almost uniform unkindness."

There was a motion by appellee to require the appellant to make the charges and specifications of the bill more specific, which was overruled, but should have been sustained by the court.

Appellee denies that she was ever at any time harsh or unkind in her treatment of appellant, or that she ever threatened his life, or attempted to poison him with strychnine or any other poison, and avers all such charges to be false.

As to the strychnine appellant testifies as follows:

" Some time since the war I had bought a lot of strychnine; the defendant got mad with me; she took a bottle from my chest, and hid it in a lot of cotton seed.   She

afterwards denied taking it, until I afterwards found it. She afterwards acknowledged it, but said she did not intend to poison me, but did it for devilment."

As to the same matter appellee testified as follows:

" I never attempted, intended, or thought of poisoning anybody in my life. Mr. Dickson sent by Mr. Sanders' daughter for some strychnine, on one occasion, and Mr. Rie (appellant) accused me of wanting to get it to poison him."

For want of corroborating evidence appellant must be regarded as having failed to prove the charge that appellee attempted or intended to poison him with strychnine.

Nor did he prove any such cruel or barbarous treatment of him by her as to endanger his life.

III. The third charge, that appellee offered such indignities to the person of plaintiff as to render his condition intolerable, was like the other charges, in the opinion of the chancellor, not sustained, and we find in the transcript nothing upon which we would overrule his judgment, and reverse the decree. As to indignities, see *Rose v. Rose, 9 Ark., 575.*

Counsel for appellant have particularly called the attention of the court to a statement made by witness W. M. Holt, in his deposition. He was a witness for appellant, and on cross-examination stated that he had heard him say that he had on one occasion raised a chair to strike his wife, but he did not strike her, because she implored and begged him with uplifted hands not to do so.

On re-direct examination witness stated that the reason appellant assigned for drawing a chair on his wife was that she had accused him in the presence of their children with *bestiality,* which was false.

It was not alleged in the bill that she had ever made any such accusation against him, nor did appellant or any witness swear that she had. Holt did not swear it, but merely repeated a declaration made to him by appellant.

The bill charges as an indignity to the person of appellant that appellee often, upon her bended knees, would pray to the God of the universe to send a thunderbolt from heaven upon the devoted head of appellant to crush him to atoms.

This, appellee, in her answer, denies, but admits that she has often prayed to the God of the helpless to avert from her devoted head and person the wrath of the plaintiff, when threatening to descend, in the shape of uplifted chairs, butcher-knives, and other fearful and deadly missiles, to crush her to atoms.

Here, again, the pleadings and depositions of the parties are in conflict, and appellant is at disadvantage for want of supporting evidence.

Upon the whole record, we must affirm the decree, and leave the parties to reconcile their unhappy quarrels, as they should, or continue to lodge apart, if they will.