CRAIG v. CRAIG.

Opinion delivered March 22, 1909.

1. DIVORCE—REASONABLE CAUSE FOR ABANDONMENT.—A reasonable cause which, within the divorce statutes, will justify one of the married parties in abandoning the other must be such conduct as could be the foundation of a judicial proceeding for divorce. (Page 43.)

2. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A chancellor's finding of facts will not be reversed for insufficiency of evidence unless there is a clear preponderance of evidence against it. (Page 43.)

3. DIVORCE—DESERTION.—Proof that a wife voluntarily left her husband against his will, that he requested her to return and she refused, and that since leaving him she has shown by her conduct a settled determination not to return to him, is sufficient to establish desertion on her part. (Page 43.)

4. SAME—ALLOWANCE OF ATTORNEY'S FEES AS SUIT MONEY.—Where a wife makes defense to her husband's cross bill asking for a divorce, it is usual to make an allowance for her attorney's fees as part of her suit money. (Page 44.)

Appeal from Sebastian Chancery Court; *J. Virgil Bourland,* Chancellor; affirmed.

*Sam R. Chew,* for appellant.

*Thomas B. Pryor,* for appellee.

FRAUENTHAL, J. The plaintiff, who is the appellant in this court, instituted this suit asking for a divorce from her husband on the ground that he was guilty of such cruel and barbarous treatment towards her, and offered such indignities to her, as to render her condition in life intolerable. He filed an answer

in which he denied every allegation of her complaint, and also filed a cross complaint in which he asked for an absolute divorce on the ground of wilful desertion. The Sebastian Chancery Court, in which the suit was instituted, entered a decree denying the prayer of the complaint and granting the prayer of the defendant upon his cross complaint; and from that decree plaintiff now prosecutes this appeal.

The defendant was a widower with six children who, at the time of his marriage to the plaintiff, were living with him, and whose ages ranged from seven years to twenty years. He was reputed to be a man of some considerable property; and, although the parties lived within five or six miles of each other for a number of years, the plaintiff had never visited at the home of the defendant prior to their marriage. Plaintiff was a woman of considerable sentiment and some temper. She had been keeping house for her father for a number of years, and seemed to be greatly devoted to him. The plaintiff and defendant were married in February, 1904, and within a few weeks they disputed, and then quarreled; and in May, 1904, they bickered and quarreled more bitterly until, on May 16, 1904, plaintiff left the home of her husband and returned to the home of her father. It would appear from the testimony that she was disappointed in the home of the defendant, in its furnishings and surroundings and the style in which it was maintained; and to some of the witnesses she said that "if she had known that things were just like they were she would not have married him," and to other witnesses she said that she did not love the defendant. He upon his part did not manifest those deep sentiments towards plaintiff for which her nature sought. So that within a very short time after their marriage a coolness sprang up between them and seemed to stay; and this separation might have been the wish of both, although she was active, and he was only negative, in the parting. Within a short time after she left him, the defendant went to her father's home to request and persuade her to return to his home; but neither evinced that strong affection towards the other which would secure a reconciliation. They remained separated; and in August, 1905, defendant instituted a suit for divorce on the ground of desertion; and in September following, at the taking of depositions

on his part, a proposal of reconciliation was made by him, and they then agreed to live together and, to use their language, "let the past be the past, we will bury it." The defendant then dismissed his suit, and they lived together until June 1, 1906, when plaintiff again left the defendant.

It would serve no useful purpose to go into the details of their conduct towards each other during the time they lived together. To speak in general terms, she claimed that he treated her harshly and cruelly by his cold manner and lack of affection, and sometimes by offensive language. But her testimony is not corroborated by any witness in these particulars. She does not claim, however, that he ever placed a heavy hand on her, or that he failed to provide well for her. Her testimony indicates that they had bickerings and quarrels, and that the defendant was not demonstrative in his affections; but the testimony does not show any studied neglect on his part that the steadfast love of a wife could not and would not overcome. The testimony of witnesses other than the defendant shows that at times she spoke harshly to the defendant, and coupled his name wrongfully with disreputable persons, and sometimes spoke in an offensive manner of his first wife; and some of the witnesses testified that she said that she did not love the defendant, and her manner indicated that she was sorry that she had married him. Finally, about June 1, 1906, after some misunderstanding, they quarreled again, and she again left defendant's home and returned to her father. She says in her deposition, which was taken more than a year after she left him, that on that occasion she left the defendant forever. One of the defendant's sons, who was called as a witness by the plaintiff, testified that at the time she was preparing to leave the defendant told him to go to the house and speak to the plaintiff and try to persuade her to stay, that he did so, and that the plaintiff said she would not stay, and to him she said that she did not love the defendant. Plaintiff's father was a witness in her behalf, and he testified that he was doubtful if they could live together, and that he was opposed to her returning to the defendant.

A few days after she left him in June, 1906, defendant saw the plaintiff at his store and asked her to return to him, and she refused. He testifies that he said to her: "You are not

satisfied to stay with me here, but let us make some changes and go from here where we will be satisfied." But she refrained from meeting his overtures, and refused to return to him. So that the evidence indicates that she left the plaintiff with the fixed determination to abandon him; and since she left him, her actions and conduct in refusing any overture of the defendant for reconciliation, in connection with the opposition of her father to any reconciliation, evinces a settled intention on her part to remain in desertion of the defendant.

Now, as is said in *Rie* v. *Rie,* 34 Ark. 37, a "reasonable cause which, within the divorce statutes, will justify one of the married parties in abandoning the other must be such conduct as could be made the foundation of a judicial proceeding for divorce." There is no corroborative evidence that shows that the plaintiff had such a reasonable cause, as above defined, to leave the defendant. Since she left him, she has never shown a desire to return to him. There is no testimony that she has ever sent him a word or message of any kind since she left him, nor that she ever made an inquiry about him or evinced any concern as to him, although she has lived during all the time within a few miles of the defendant. The testimony of the defendant and other witnesses and the circumstances sufficiently show that the plaintiff left the defendant against his will without that reasonable cause which the law requires to be proved by proper evidence, and that this desertion on her part was intentional and wilful, and has so continued. This was the finding of the chancellor; and, in the absence of a clear preponderance of evidence against such finding, the decree will not be reversed for insufficiency of evidence. *Sulek* v. *McWilliams,* 72 Ark. 67; *Hinkle* v. *Broadwater,* 73 Ark. 489; *Reed* v. *Reed,* 62 Ark. 611. Upon the contrary, a preponderance of the evidence, consisting of testimony of the defendant, corroborated by the testimony of other witnesses and the circumstances, would establish a case where the wife left her husband of her own accord without his consent and against his will; and that afterwards he requested her to return and she refused; and that continuously, since she left him, she has shown by her actions and conduct a settled determination not to return to her husband, and without legal cause. This is sufficient to establish a case

of desertion. 2 Bishop on Marriage, Divorce & Separation, § 1475; *Jennings* v. *Jennings,* 2 Beasley (N. J. Eq.) 38; *De-Armond* v. *DeArmond,* 66 Ark. 601. We have carefully examined the testimony of this case, and we are unable to say that the chancellor has committed any error in his findings or in his decree.

An application was made in this court for the allowance of attorney's fees for services in prosecuting this appeal before the final submission of this cause. At that time we stated that we would pass upon the application on the final hearing of the case, and in the meanwhile ordered $50 paid thereon. An allowance of attorney's fees is usually proper in a case like this as suit money in the wife's defense to the cross bill of her husband asking a divorce. *Slocum* v. *Slocum,* 86 Ark. 469; *Strickland* v. *Strickland,* 80 Ark. 451.

The defendant was reputed to own considerable property, but we find that he is not in good financial circumstances, and that he must bear the expense of maintaining a considerable family. We think that $75 is a reasonable allowance for attorney's fees for the services of learned counsel in this court; and of this sum $50 has heretofore been paid, and the balance of $25 is now ordered to be paid as part of the costs of this cause. The decree of the Sebastian Chancery Court is affirmed, at the cost of the appellee.