ALEXANDER *v.* ALEXANDER.

Opinion delivered April 11, 1910.

DIVORCE—DESERTION—CONDONATION.—The fact that, after a wife voluntarily abandoned her husband, he contributed money to defray her expenses during her illness and showed himself anxious to receive her, should she return, was not a condonation of her desertion.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellee sued appellant for a divorce April 28, 1909, alleging that he was married to appellant in Little Rock, Arkansas, April 10, 1908, that he and his wife went to Carlisle to live, and that the next day appellant willfully abandoned him without cause, and has so continued to willfully desert him for a period of more than one year.

Appellant answered, denying that she had willfully deserted and abandoned appellee without reasonable cause. She states the facts to be that:

It was against appellant's will and desire to separate, and has ever been so, and is now her desire to live with appellee, ever ready and willing to return to appellee if he would permit her, and she has repeatedly so informed him, and he refused to give his consent and treated her with silent contempt. That her absence has been caused by will of appellee and against her will and over her protest. She performed her duty as wife, and gave him no cause to refuse her his home, and that the

alleged abandonment and desertion is on his part. She prays that divorce be denied, and the complaint dismissed. She also moved the court in writing for suit money and alimony.

The appellee filed what he termed an answer to appellant's cross complaint, in which he denies all its material allegations, and he sets up, in answer to the motion for alimony, the fact that a suit had been instituted by appellant on the 17th day of July, 1908, against appellee for separate maintenance and alimony; sets out as exhibits to his answer the record of the proceedings in that cause, including all the pleadings and depositions and the final order showing her complaint for maintenance dismissed for want of equity and pleads *res judicata* as to this. The appellant moved that this answer to the so-called cross complaint be dismissed, which was overruled.

The court, after hearing all the evidence, rendered a decree in favor of appellee for divorce, and denied appellant alimony and attorney's fees.

*Kerby, Midyett & Tucker,* for appellant.

The court below should have allowed alimony and attorney's fee. 44 Ark. 46. Asking for expense money was a defense, and not a cross complaint. 66 Ark. 93. There can be no reply to a defense. Kirby's Dig., § 6108; 44 Ark. 293; 34 Ark. 613. And, when improperly filed, should be stricken out. 48 Ark. 243; 33 Ark. 56; *Id.* 593; Newman, Pld. & Pr. 627. To leave for medical treatment is not a desertion. 62 Ark. 613. To establish a desertion, it must appear that defendant left of her own accord and against the will of the other party. 13 N. J. Eq. 38.

*Trimble, Robinson & Trimble* and *Robertson & Demers,* for appellee.

A motion setting up cause and praying for affirmative relief constitutes a cross complaint. 12 Colo. 504. There was no consent for her to remain away. 62 Ark. 615.

WOOD, J., (after stating the facts). It was proper for the court to consider the record in the suit for maintenance as a part of the evidence in this case. We gather from the entire record that appellant, who had been twice married, "put matrimonial ad. in Democrat month or two after" she arrived from

Parsons, Kansas, where she had formerly lived, and "got forty answers." Like the suitors to "fair Portia," "from the four corners of the earth they came to kiss this shrine." Appellee (Dr. Alexander) was among the many who answered her advertisement; she liked his letters. He "visited her once or twice a month, and wrote "a letter every week, except when he was sick;" she was "very well impressed with him." He represented himself as a man of means, having property worth $17,000. He said he had given other wives $1,000 on marriage, and would give appellant more. She thought he was a man of honor, and relied upon his representations. She did not know of his drinking before marriage, and thought she would be proud of him. These were the visions of happiness that came to appellant as she contemplated marriage with appellee. But alas! scarcely had the word been spoken that joined them in wedlock, before "a change came over the spirit" of her dream. For he began to drink before they had left Little Rock, and was dazed with liquor, and "smelt so of whisky that it almost made appellant sick as he sat beside her" on the train to Carlisle. When she reached the doctor's home, she found a beautiful yard and a house that looked real well on the outside." "The porch was covered with roses," but within (according to her version) was reeking with filth. For she "had a notion to hollo, and went through the room as fast as she could go." There was no oil in the cruse, and no meal in the barrel. "Two eggs and a little piece of bacon meat" was the provision he had made for the wedding feast. The tableware was meagre, old and broken. The household and kitchen furniture was scanty, dilapidated and filthy. The stench was so great she "went out on the porch and cried." Then the appellee's stepson came, and invited them to supper. They went, and, while waiting for supper, appellant went to the drug store and came back in a dazed condition. His stepdaughter said he was drinking, and that "no decent woman could live with him." After supper they again went to the doctor's house to spend the night, and when bed time came he was helpless. "She helped him to bed;" "he went to sleep in a stupor," got up at 1 A. M., drank half of glass of alcohol, and then "kept pulling and hauling at me," she says, "until 4 A. M., then up, drank a dose of medicine, which he said he had to take

to quiet his nerves so that he could sleep, went back to bed and "to sleep again in a dazed condition," and remained so until eight or nine o'clock in the morning. When morning came, she appealed to Walker, stating to him that the doctor said he had taken strychnine, and she was alarmed. She was informed by Walker: "That is nothing; takes worse than that." She said on account of his condition would return to Little Rock, refused to go to his house with him, got sick "seeing him the way he was all night," and Mrs. Walker telephoned her daughter to come out that evening. He was drunk Sunday evening; she could not stay with him acting like that; told him she would go. He pleaded with her to stay, saying he would not drink any more; but she left, saying: "If you will do all right, I'll come back."

The above is the picture, before and after, of the matrimonial venture between appellant and appellee, as graphically portrayed by appellant herself. It shows that appellant abandoned the bed and board of appellee after an experience of only one day and night. She said if she had known that the doctor drank before marrying him she would not have married him. She testified in the suit for maintenance that "if the doctor would quit drinking and fix up his house so it would be comfortable and decent," she did not think she could live with the doctor.

The chancellor was warranted in reaching the conclusion from appellant's own testimony that she had abandoned the appellee forever. She left him, according to her own evidence, with supreme disgust for his person and his home.

If the facts were as horrible as she depicted, she was not without excuse for leaving him temporarily: And if the conditions were as she described on the wedding night, and there was no reformation, she was warranted in leaving him permanently. For no wife would be expected to endure a continuation of the indignities and indecencies which she relates as having occurred the first night. Such conduct, continued, would be a ground for divorce. *Craig* v. *Craig,* 90 Ark. 40; *Rie* v. *Rie,* 34 Ark. 37. The chancellor, however, doubtless concluded, from the testimony on behalf of appellee, that the facts with reference to appellee's person, habits and his home surroundings

were not as repulsive as portrayed by appellant. The appellee himself denied categorically the charges of drunkenness on his wedding night and the other occurrences which she says took place at his home and at Walker's, his stepson's. He admitted that his carpets were old, and that his furniture was not new and elegant, but maintained that his home was as well equipped with the comforts and conveniences of ordinary domestic life as one of his financial ability could be expected to provide. He showed that his stepdaughter and another lady had thoroughly cleansed and prepared his house for their homecoming after the wedding. He proved that he was not in the condition of intoxication at Mrs. Walker's that appellant described. He showed that he protested against her leaving him, and with tender and affectionate letters invited her to return after she had gone, promising to make the home as inviting and comfortable as possible for her. But she declined the invitation. While there was testimony in the record to the effect that appellee would get on occasional sprees and be drunk during those sprees, there was no testimony except the testimony of appellant that he was on such spree on the occasion of his marriage. Witnesses testified on behalf of appellee that he was an upright, honorable gentleman, and that no one in the community was more respectable. Witnesses in his behalf testified that appellant made inquiry about the condition of his property while at Carlisle, whether he had any money in bank, and whether his land was under mortgage, and one witness said when appellant was told that appellee was under mortgage and did not have any money, "her hopes fell right then."

True, appellant testified that she wanted to return to appellee, and repeatedly wrote him letters to that effect, which letters she says he ignored, and treated with silent contempt. But the only letters she exhibits in the record, protesting her desire to return, were written after the divorce suit was instituted, and after her suit for separate maintenance had been tried, and her complaint dismissed for want of equity. The chancellor did not believe that she was sincere in wishing to return to appellee, but doubtless concluded that her desertion of him from the beginning was without any justifiable provocation, and that, notwithstanding his earnest and affectionate entreaties for her

return (as shown by his letters), she continued to willfully absent herself from him until one year had passed, and his cause for divorce was complete.

The fact that appellee, notwithstanding her desertion, contributed money to defray her expenses during illness, and showed himself anxious to receive her, should she return, was not a condonation of her dereliction in remaining away from his home, but on the contrary only served to emphasize her delinquency in so doing. *Reed* v. *Reed,* 62 Ark. 615; *Craig* v. *Craig,* 90 Ark. 40.

Affirm.