SANTIAGO ARCE ACEVEDO, Plaintiff and Appellee, v. MARÍA DE LA LUZ LEBIS, Defendant and Appellant.

No. 6980.   Argued November 6, 1936.—Decided February 12, 1937.

*Rafael Barbosa* for appellant.   *Buenaventura Esteves* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

Santiago Arce Acevedo filed suit for divorce against his wife María de la Luz Lebis, on the ground of desertion for a period of more than a year. The defendant answered denying all the facts alleged in the complaint.

Judgment having been rendered for the plaintiff dissolving the bonds of matrimony between the parties, the defendant appealed, assigning the following as errors committed by the trial court:

1. In weighing the evidence and in having concluded that there was desertion on the part of the defendant, inasmuch as the evidence shows that the desertion, if there was any, was on the part of the plaintiff; and because the preponderance of the evidence is in favor of the defendant and against the plaintiff.

2. In rendering judgment in the form it did, the judge showing that he was moved by bias and prejudice by the manner in which he conducted the trial and by the conclusions he reached in the opinion rendered in this case.

The trial court found the following facts proved:

"As a result of the evidence, the court finds as true and established facts that the plaintiff and the defendant were married in the city of Aguadilla on February 2, 1912; that from the said marriage there was born a daughter named Cándida Arce Lebis, who on the date of the filing of the complaint was of age; that there is community property subject to the corresponding liquidation and partition; that for many years both parties occupied as a residence the upper floor of a house located on Stahl Street in this town; that in the month of November, 1929, after the defendant had lodged Antonia Pía in the conjugal domicile and the daughter of the marriage had gone out with her on some occasions, a certain strain arose in the relations between the plaintiff and the defendant, since the former objected to the lodging the said Antonia Pía and to her being accompanied by his daughter when she went out in the town; that this situation gradually became more bitter until a radical separation, *mensa et thoro*, was established between the two spouses; that on a certain occasion the plaintiff (who was suspecting that his unwelcome guest might prepare poisonous draughts for him) threw some flasks containing unknown and to him suspicious liquids out the window; that in spite of the persistent objection of the husband Antonia Pía remained in the house of the spouses Arce Lebis for about four months, and that the spouses continued to be separated although they were occupying the same floor of the building, until October, 1931, when the plaintiff, feeling himself deserted by his wife, went to live on the lower floor where he has a grocery busi-

ness; that although several persons approached the wife and daughter to inform them of the state of the plaintiff's health, neither the wife nor the daughter went near the sick man or offered him any kind of care or attention, to the point that the defendant herself, in answer to the attorney for the plaintiff, stated that she did no even ask what doctor was assisting her husband; *that up to the date of the trial of this case the separation of the spouses had continued without either of them having made slightest attempt at reconciliation.*'' (Italics ours.)

The testimony submitted by the parties, taken together, is contradictory on several points.

■ For the decision of this case, we shall take the evidence most favorable to the plaintiff, that is, his own testimony given in court, insofar as it is pertinent. He testified that he was married to the defendant in Aguadilla in February, 1912, that five children were born of the marriage, of which one, Cándida, is living; that in November, 1929, Antonia Pía went to live in his house; he had heard that she practiced witchcraft for which reason he forbade his daughter to go out with her; that this attitude annoyed his wife and she became angry with him to the point of not preparing the bed in which he slept; that the said Antonia Pía left his house six months later and then he tried to reconciliate his wife, but that she prevented him by locking herself in her room; that she neither prepared nor served his meals; that in November, 1931, he felt ill while he was resting in a hammock that he had in the back room of his commercial establishment; that upon being asked by a friend if he wanted his wife to be informed he answered yes; that the friend told him that his wife had said that she did not want to have anything to do with him; that from that time on he did not return to his home; that the separation between them originated with the presence of Antonia Pía in his house; that he attends to all of the necessities of his house; that his illness lasted about eight days and that he was convalescent for more than twenty five days; that his wife did not go to see him during that time and that his food was prepared by

Rosita Esteves, a sister of his attorney; that on Christmas of 1932 he attempted a reconciliation with his wife through Miguel H. Díaz.

Perhaps it is well to add that according to the uncontroverted testimony of the defendant, corroborated by that of her daughter Cándida, Antonia Pía for many years had the custom of staying from time to time at the home of the plaintiff, and that up to 1929, the latter had never objected to this. The fact should also be mentioned that except for the testimony of the plaintiff himself the record shows nothing which tends to cast a shadow on the character, reputation and honorability of Antonia Pía.

In November, 1931, the plaintiff definitely separated from his wife, his daughter and his home. This is not the ordinary case of divorce on the ground of desertion, in which the deserted spouse requests the dissolution of the bonds of matrimony. In this case the defendant remained with her daughter in the home which had always been that of the parties to this action. The evidence of the plaintiff must be, then, much stronger and clearer than usual.

In accordance with the statutes dealing with divorce, the reasonable cause which may justify a spouse in leaving the other must be conduct of such nature as to constitute grounds for a divorce action against the spouse who remains in the home. See: *Rie* v. *Rie,* 34 Ark. 37; *Craig* v. *Craig,* 117 S. W. 763.

Accepting as true and established facts the annoyance caused the plaintiff by the presence of Antonia Pía in his home, the refusal of his wife to send her away and the quarrels and disagreements between the spouses as a consequence of such a refusal, those facts would not be sufficient in themselves to support a divorce action against the wife, and cannot therefore be sufficient cause to justify the desertion of the wife by the plaintiff husband. The evidence shows beyond all doubt that it was the plaintiff who left the home, leaving his wife and daughter there. The disagreement and quarrels

between the plaintiff and his wife are not so important and serious that they cannot be forgotten or that they render a reconciliation between the parties impossible. Indeed, the evidence is altogether insufficient to sustain the allegation of desertion on the part of the wife. The spouses have continued living under the same roof, she, on the upper floor of the house accompanied by her daughter, and ready to receive the husband at her table and in her bed, according to her own testimony and that of her daughter; he, on the lower floor of the same house, taking care of the economic needs of his wife and daughter, sometimes accepting and sometimes refusing the food sent to him by his family, and making efforts through friends and an attorney to induce the wife to file the complaint for divorce herself, a proposal which tends to show that the husband, not being certain of the success of a complaint filed by him, as deserted by his wife, was looking for an agreement by which she would allege desertion and he would permit a judgment by default to be entered. The refusal of the wife to enter into such an agreement, her opposition to the divorce which the husband requested, and her readiness to receive the latter in the home are strong indications that it is he and not she who desires to break the bonds of wedlock on grounds which in our opinion are frivolous and unimportant. The law and public morals require something more than those slight disagreements which are frequent in married life and which just as frequently disappear like summer clouds, to justify dissolution of the bonds of matrimony.

Accepting the truth of the testimony of the plaintiff and his witnesses we should put the juridical problem thus: Would the plaintiff have the right to a divorce decree because of the fact that his wife harbored a friend who was not pleasing to him in her house for some time; because the wife did not arrange his room in time; because she did not serve his meals to his taste; because she did not attend to her domestic duties according to his wishes; and because she refused

to live with him as his wife, according to the words of the defendant herself, because she had seen "many things which have been sad and painful for me and which I will not name because I am ashamed?" Surely a complaint based on such facts could not prosper, since our Civil Code, in spite of its liberality, does not recognize facts of this nature among the grounds for divorce. And the legal situation cannot be changed by the plaintiff by merely moving from his room and taking his meals from an eating house.

This court in *Dueño* v. *Dueño*, 28 P.R.R. 920, has held that:

"The vague statement that plaintiff was somewhat seriously ill does not necessarily imply that he required any special care or attention from the defendant, nor that he was unable to take his medicine without assistance, nor even that he was confined to his bed. On the contrary, plaintiff seems to have been quite able, not only to minister to his own wants, but to make the journey to the house of his parents, although neither the distance traveled nor the means of transportation employed nor the manner in which he made use of same is disclosed."

On page 923 in the same opinion, it is said that:

"The failure to lavish attention upon a more or less indisposed husband or even to give him his medicine can hardly be regarded as cruel treatment nor, without more, as justification for the desertion of wife, home and children by such husband."

See *Figueroa* v. *Pierluisi*, 25 P.R.R. 460.

In the case of *Axtmayer* v. *Ortiz*, 19 P.R.R. 476, page 479, the following is said:

The plaintiff complains of a refusal of conjugal rights, and the proof is contradictory on this point. We find that in some States a persistent and continued refusal of marital intercourse by one of the spouses without causes of justification constitutes desertion, although the parties still live under the same roof. By the weight of authority however the mere withdrawal from the marital bed is not sufficient to constitute such an offense. There must be a substantial abandonment of other marital duties also. *Fritz* v. *Fritz*, 138 Ill., 436; *Throckmorton* v. *Throckmorton*, 86 Va., 768; *Fink* v. *Fink*, 137 Cal., 559.

"It will be observed that the plaintiff, while complaining that the defendant denied him conjugal rights, classes these acts as *cruelty* and not as *desertion,* alleging the cruelty to consist, among other things, of a refusal to cohabit with the plaintiff. It is not so classed in the decisions which we have been able to examine; and in many cases it has been held that the refusal of cohabitation must be denied to such an extent as to compel the injured party to leave the family home, and this result must have been intended by the guilty party and only amounts to desertion upon the lapse of the statutory period required therefor. *Holston* v. *Holston,* 23 Ala., 777; *Sisemore* v. *Sisemore,* 17 Oregon, 542; *Camp* v. *Camp,* 18 Tex., 528."

In *Fernández* v. *Hernández,* 8 P.R.R. 229, this court said:

"The trial judge is right. A spouse who resorts to so important a remedy as that of divorce, sundering the marriage bond and destroying a home born of mutual love, in which there no ware innocent children, should be free from all fault, a real victim who has exhausted all friendly means to arrest the evil at its inception."

See *Kennerly* v. *Kennerly,* 29 P.R.R. 723.

██ We do not find in the record sufficient evidence of a firm and decided determination on the part of the defendant to live separated from her husband. On the contrary she testified as follows in answer to questions of his attorney:

Q.—Tell me, are you willing and have you always been willing to live with your husband and to continue as you were before he left?

A.—I always tried to avoid any quarrel between us and stood everything and saw many things which have been very sad and painful for me which I will not name because I am ashamed, and in spite of everything I tried to avoid everything in order to maintain peace and union in the home because I always had faith that that would all pass and that he would be as he was before.

Q.—You are now willing to live with your husband?

A.—I always have been and am willing to live with my husband because I have always loved him.

Q.—And you still love him?

A.—I love him and he is the father of my daughter and if he had come I would have accepted him at any time.

The record does not show that the plaintiff husband has at any time expressed the same sentiments of love or desire for a reconciliation with his wife.

The case of *Mas* v. *Muñoz*, 35 P.R.R. 799 is perfectly applicable. It was said there:

"The fact of physical separation is not sufficient; nor that of mere quarrels. It is necessary to show a firm and deliberate intention, followed by action, not to live together, but actually to break the matrimonial bond. And in this case the wife did not so act. She testified at the trial 'that it was never her intention to separate herself definitely from her husband and never had thought of it, for she loved him and he is the father of her children, he being the only man whom she has loved.' "

The trial court committed manifest error in holding that the separation of the spouses, *a mensa et thoro,* for a term greater than one year has the same legal effect as desertion, for the purposes of decreeing the divorce in accordance with paragraph 5 of Section 96 of the Civil Code, 1930 ed., as amended by Act no. 46 of May 9, 1933, (Laws, p. 304). Such separation, from bed and board, cannot be a ground for divorce, unless it has continued without interruption for a period of more than seven years, according to the provisions of paragraph 9 of the Section cited. The evidence presented by both parties clearly establishes the separation of the spouses, but it is in our opinion insufficient to establish the alleged ground of desertion of the husband by the wife, especially if it is taken into account that the trial judge himself states in his opinion that neither of the spouses has made the slightest attempt at reconciliation. How is it possible to maintain that a spouse has been deserted if he has not made even the slightest attempt at reconciliation with the other?

The second error assigned is absolutely groundless and must be dismissed.

The judgment appealed from is reversed.

Mr. Chief Justice Del Toro and Mr. Justice Wolf took no part in the decision of this case.