CALHOON v. CALHOON.

4-7711                                    189 S. W. 2d 644

Opinion delivered October 8, 1945.

*J. C. Brookfield,* for appellant.

*J. L. Shaver,* for appellee.

ROBINS, J. This is a divorce suit brought by appellee against appellant. In her complaint appellee alleged that "appellant continually nagged at her, . . . fussed and quarreled, failed to support her, and generally showed contempt and indignity for her to such an extent that it rendered her condition in life intolerable." Appellant in his answer denied these charges. The lower court found "that plaintiff is entitled to a divorce from the defendant on account of the fact that the said defendant treated her with such contempt and indignities and to such an extent as to render her condition in life intolerable," and rendered decree granting appellee an absolute divorce from appellant and awarding her the custody of their nine-year-old daughter.

These parties were married on December 27, 1932. They lived together as husband and wife until July 8, 1943, at which time, according to appellee's testimony, she told appellant she would no longer live with him as his wife, and a short time later appellant was, at her request, moved to the home of one of his relatives. For more than nine years before the separation appellant had been afflicted with arthritis, and much of this time he had been virtually helpless. Appellee was forced to work and make a living for the family. She testified: "We never did fuss because I would not fuss. He would just nag and nag, and I never did anything to please him. He always had to make some remark about what I did. He just fussed about why I didn't do it this way, and would say: 'What went with your money? I don't see what you did with it.' I would have to listen to this every time I had pay-day. . . . He kept on a constant nagging and I couldn't stand it any longer. . . . When company came in he would just talk and have more to say than anybody, but when they left he shut up like a clam. . . . I told his brother to come and get him and he did."

Corroborating witnesses for appellee were Mrs. Florence McElroy and Mrs. Leta Wood. Mrs. McElroy testified that she was a friend of both the parties; that on one occasion appellant called her (Mrs. McElroy) a liar, but apologized for doing so, and that this was the only occasion on which she ever heard a fuss between appellant and appellee. "They were not congenial—at least they didn't talk like a man and wife should; I never heard him say he loved her; . . . their temperaments were such that you could tell they couldn't get along." Mrs. Wood testified: "Henry (appellant) was hard to please, and he seemed to me unappreciative of what Ida Lea would do for him. Of course, he couldn't help himself, and Ida Lea had to wait on him, and I never heard him say 'thank you' or seem to appreciate the good treatment he was getting. Q. Did you have occasion to observe whether their temperaments and dispositions would blend together, and whether they could live

happily? A. Yes, I did and I didn't think they could. Q. What was the trouble? A. She appreciated a good home, clean house, and cleanliness about the person, and just several things that he did not care about. There was just kind of a conflict there I would think.''

The statute under which appellee sought and was granted relief (subdivision 5 of § 4381, Pope's Digest, of the laws of Arkansas) authorizes the granting of a divorce when one spouse shall ''be guilty of such cruel and barbarous treatment as to endanger the life of the other, or shall offer such indignities to the person of the other as shall render his or her condition intolerable.''

Judge McCulloch, in the case of *Malone* v. *Malone,* 76 Ark. 28, 88 S. W. 840, said: ''In the case of *Kurtz* v. *Kurtz,* 38 Ark. 119, Judge Eakin, speaking for the court, approving the rule laid down in *Rose* v. *Rose,* 9 Ark. 507, that the personal indignities contemplated by the statute as grounds for divorce included 'rudeness, vulgarity, unmerited reproach, haughtiness, contempt, contumely, studied neglect, intentional incivility, injury, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate, alienation and estrangement,' said: 'It must be confessed that this position goes to the very verge of safety, and should be pressed no further. In applying it the chancellor should act with great caution to avoid the gradual approach, by imperceptible steps, to the practice of holding all matrimonial bickerings by which parties may render each other unhappy to be valid ground of divorce. Where there are no fixed and well defined barriers of principle, it is difficult to limit the encroachment of precedents setting in one direction. Each so nearly supports the next that before one is aware the bounds of reason are passed.' In *Cate* v. *Cate,* 53 Ark. 484, 14 S. W. 675, Chief Justice Cockrill said that 'courts are not quick to interfere in domestic quarrels, and where the parties are equally at fault it must be shown at least that there is something that makes cohabitation unsafe, to move the courts to interfere.' We think that this court has gone to the limit in the case of *Rose* v. *Rose, supra,* and that it

would be extending the rule entirely too far to hold that a divorce should be granted upon the testimony of appellee, corroborated only by the daughter, who was but nine years old at the time of the occurrence about which she undertakes to testify, and by one other witness who relates one instance of harsh language used by appellant to his wife.''

In the case of *Kientz* v. *Kientz,* 104 Ark. 381, 149 S. W. 86, this rule as to the cruel treatment that would justify the granting of a divorce was laid down: ''In order to constitute cruel treatment, which our law recognizes as ground for divorce, there must be proof of wilfulness or malice on the part of the offending spouse, and the effect of that treatment must be to impair or threaten the impairment of the complaining party's health or such as to cause mental suffering sufficient to make the condition of the complaining party intolerable. Mere incompatibility of temperament or want of congeniality and the consequent quarrels causing unhappiness are not sufficient to constitute that cruelty which, under our statute, will justify divorce. The marriage state cannot be considered as one of convenience, but it is one which has been entered into 'for better or for worse,' and must continue for life unless sundered for the grounds named in the statute justifying its dissolution, which must be proved by clear evidence. As is said in the case of *Cate* v. *Cate,* 53 Ark. 484, 14 S. W. 675: 'It must be shown at least that there is something that makes cohabitation unsafe to move the courts to interfere.' ''

When the evidence in the case at bar is weighed in accordance with the principles enunciated in the above cases, it must be held that appellee's proof was insufficient to entitle her to a divorce. Assuming, without deciding, that appellee's own testimony sufficiently established grounds for divorce, there was no corroboration thereof; and, under the long established rule in this state, the party seeking a divorce must establish grounds therefor by evidence other than his own. *Rie* v. *Rie,* 34 Ark. 37; *Kurtz* v. *Kurtz,* 38 Ark. 119; *Scarborough* v. *Scarborough,* 54 Ark. 20, 14 S. W. 1098; *Kientz* v. *Kientz,*

104 Ark. 381, 149 S. W. 86; *Arnold* v. *Arnold*, 115 Ark. 32, 170 S. W. 486; *Welborn* v. *Welborn*, 189 Ark. 1063, 76 S. W. 2d 98.

Giving the testimony of appellee's corroborating witnesses its strongest probative force, it showed only that appellant was unappreciative of his wife's good treatment of him and that there was a lack of congeniality and difference of temperament between the parties. But want of appreciation, lack of congeniality and difference in temperament do not constitute grounds for divorce.

While the evidence was not sufficient to authorize the granting of a divorce to appellee, we think the lower court properly awarded appellee the custody of the nine-year-old daughter of appellant and appellee. So far as the record shows, appellee has been giving the little girl suitable care and attention and there is nothing in the record to indicate that she is not a fit person to have custody of this child.

So much of the decree as grants appellee a divorce from appellant is reversed with directions to dismiss the complaint for divorce for want of equity; that portion of the decree awarding custody of the child of the parties to appellee is affirmed.